**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| GAVIN McINNES,<br><br>　　　　　　*Plaintiff*,<br><br>v.<br><br>THE SOUTHERN POVERTY LAW CENTER, INC.,<br><br>　　　　　　*Defendant*. | No. 2:19-cv-00098-MHT-GMB |

**BRIEF OF AMICUS CURIAE AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION OF ALABAMA, AND CENTER FOR CONSTITUTIONAL RIGHTS IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Vera Eidelman
Brian Hauss
Esha Bhandari
Sarah Hinger
Nusrat J. Choudhury
ACLU Foundation
125 Broad Street, 18th Fl.
New York, NY 10004

Randall C. Marshall
Brock Boone
ACLU Foundation of Alabama
P.O. Box 6179
Montgomery, AL 36106
T: 334.420.1741
rmarshall@aclualabama.org
bboone@aclualabama.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTEREST OF AMICUS CURIAE .................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................ 3

ARGUMENT ........................................................................................................................ 5

   I.   The First Amendment protects the right to condemn repugnant views. ............................ 5

   II.  A defamation claim based on statements of opinion or disclosed facts that criticize hateful and bigoted views cannot satisfy the First Amendment. ...................................................... 6

      A.   SPLC's alleged statements are protected expressions of opinion that are critical to public discourse .................................................................................................................... 6

      B.   SPLC's alleged statements are protected expressions of opinion because they may be interpreted differently by different audiences. ............................................................ 9

   III.  The First Amendment requires an allegation of actual malice .......................................... 11

CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Buckley v. Littell,*
 539 F.2d 882 (2d Cir. 1976) ................................................................................... 8, 9

*Condit v. Clermont Cty. Review,*
 110 Ohio App. 3d 755 (1996) ................................................................................. 11

*Curtis Publ'g Co. v. Butts,*
 388 U.S. 130 (1967) ............................................................................................. 5, 11

*Gertz v. Robert Welch, Inc.,*
 418 U.S. 323 (1974) ........................................................................................ 6, 11, 12

*Grutzmacher v. Chicago Sun-Times, Inc.,*
 No. 91 L 06561, 1994 WL 742257 (Ill. Cir. Ct. Sept. 28, 1994) ............................ 10

*Hanson v. Cty. of Kitsap, Wash.,*
 No. 13-5388 RJB, 2014 WL 2931817 (W.D. Wash. June 30, 2014) ....................... 10

*Horsley v. Rivera,*
 292 F.3d 695 (11th Cir. 2002) ................................................................................. 7

*Hustler Magazine, Inc. v. Falwell,*
 485 U.S. 46 (1988) .................................................................................................... 6

*Jackson v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC,*
 No. 2:07-CV-461-JEO, 2009 WL 10704261 (N.D. Ala. Feb. 23, 2009) ................................. 10

*Martin v. Brock,*
 No. 07C3154, 2007 WL 2122184 (N.D. Ill. July 19, 2007) ................................... 10

*Michel v. NYP Holdings, Inc.,*
 816 F.3d 686 (11th Cir. 2016) ......................................................................... 12, 14

*Milkovich v. Lorain Journal Co.,*
 497 U.S. 1 (1990) ................................................................................................. 7, 12

*NAACP v. Button,*
 371 U.S. 415 (1963) .................................................................................................. 4

*New York Times Co. v. Sullivan,*
 376 U.S. 254 (1964) ........................................................................................ passim

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin,*
 418 U.S. 264 (1974) .................................................................................................. 7

ii

*Puccia v. Edwards*,
No. 98-00065, 1999 WL 513895 (Mass. Super. Apr. 28, 1999)............................................. 10

*Raible v. Newsweek*,
341 F. Supp. 804 (W.D. Pa. 1972) ................................................................................. 8, 10

*Roth v. United States*,
354 U.S. 476 (1957) ................................................................................................................ 5

*Rutherford v. Dougherty*,
91 F.2d 707 (3d Cir. 1937)...................................................................................................... 8

*Rybas v. Wapner*,
457 A.2d 108 (Pa. 1983) ......................................................................................................... 9

*Smith v. Sch. Dist. of Philadelphia*,
112 F. Supp. 2d 417 (E.D. Pa. 2000) .................................................................................... 11

*Squitieri v. Piedmont Airlines, Inc.*,
No. 3:17CV441, 2018 WL 934829 (W.D.N.C. Feb. 16, 2018) .............................................. 10

*Stevens v. Tillman*,
855 F.2d 394 (7th Cir. 1988).............................................................................................. 8, 9

*Thornhill v. Alabama*,
310 U.S. 88 (1940) ................................................................................................................... 5

*Tillett v. BJ's Wholesale Club, Inc.*,
No. 3:09-CV-1095-J-34MCR, 2010 WL 11507322 (M.D. Fla. July 30, 2010) ...................... 10

*Time, Inc. v. Hill*,
385 U.S. 374 (1967) ................................................................................................................. 5

*Turner v. Wells*,
879 F.3d 1254 (11th Cir. 2018)............................................................................................... 7

*Vail v. The Plain Dealer Publ'g Co.*,
649 N.E.2d 182 (Ohio 1995) ................................................................................................... 9

*Ward v. Zelikovsky*,
136 N.J. 516 (1994)............................................................................................................. 8, 9

## Other Authorities

Gavin McInnes, *Proud Boys Declare Victory in Berkeley,* Taki's Magazine (Apr. 20, 2017) ...... 3

Gavin McInnes, *The West is History*, Taki's Magazine (Aug. 3, 2017)........................................ 3

Gavin McInnes, *They Call Americans Monsters*, Taki's Magazine (July 13, 2017)..................... 3

Gavin McInnes, *Turning a Blind Eye*, Taki's Magazine (May 4, 2017) ....................................... 3

Gavin McInnes, *Wonder Woman Makes You Wonder About Women*,
    Taki's Magazine (June 8, 2017) ................................................................................................. 3

## INTEREST OF AMICUS CURIAE[1]

The American Civil Liberties Union (ACLU) is a nationwide, nonprofit, nonpartisan organization with over 4 million members and supporters dedicated to defending the principles embodied in the Constitution and our nation's civil rights laws. The ACLU of Alabama is a state affiliate of the ACLU. The ACLU and the ACLU of Alabama have frequently appeared before courts throughout the country in First Amendment cases, both as direct counsel and as amicus curiae. This includes defending against defamation cases that improperly infringe upon First Amendment rights. *See, e.g., Green Grp. Holdings, LLC v. Schaeffer,* No. CV 16-00145-CG-N, 2016 WL 6023841 (S.D. Ala. Oct. 13, 2016); Order, *Energy Transfer Equity, LP v. Greenpeace International*, No. 1:17-cv-00173-BRW (D. N. Da. Feb. 14, 2019). The preservation of a pleading standard for defamation that satisfies the First Amendment is therefore of immense concern to the ACLU, its civil rights clients seeking justice, and its members and donors.

The Center for Constitutional Rights (Center) is a national non-profit legal, educational, and advocacy organization dedicated to advancing and protecting the rights guaranteed by the United States Constitution. Founded in 1966 by attorneys representing civil rights and racial justice activists in the South, the Center has litigated numerous landmark cases under the First Amendment of the United States Constitution. *See Dombrowski v. Pfister*, 380 U.S. 479 (1965) (anti-sedition prosecutions of civil rights activists chilled First Amendment rights); *Kinoy v. District of Columbia*, 400 F.2d 761 (1968) (free speech rights in courtroom); *Soglin v. Kauffman*,418 F.2d 163 (1969) (upholding rights of students expelled for lawful protest); *Capitol*

---

[1] Amici confirm that no party or counsel for any party authored this brief in whole or in part and that no person other than amici or their counsel made any monetary contribution intended to fund the preparation or submission of this brief.

*Police v. Jeannette Rankin Brigade*, 409 U.S. 972 (1972) (right to demonstrate on Capitol steps);

*Texas v. Johnson*, 491 U.S. 397 (1989) (flagburning during political protest is protected speech).

## SUMMARY OF ARGUMENT

As a result of his own actions, Plaintiff Gavin McInnes is a public figure embroiled in a public controversy about white supremacy and racial justice. McInnes is a co-founder of Vice Media and a frequent contributor to radio and television programming. In 2016, he founded the Proud Boys. He has been the subject of significant media attention due to his rhetoric about race, sex, gender, religion, immigration, and other matters of public concern. This rhetoric includes referring to a transgender person as "[a] hideous man who thinks he's a woman";[2] stating that "Muslims can rape children with **reckless abandon**,"[3] and that Lebanese individuals are "cretins";[4] expressing the desire to ask "a bored Puerto Rican chick . . . . [if she sees] how much [she] owe[s] Western man";[5] opining that "poor Hispanics . . . are incompatible with American culture";[6] stating that "affirmative-action hires tend to" "titter[ ] and swoon[ ]"; and arguing that a Black man who is "mistaken for a **homeless man**," should be "mad" not at the person who mischaracterizes him, but "at all the homeless black men who . . . created this stereotype in the first place."[7]

Despite making such statements publicly, thereby—rightly—drawing condemnation, McInnes attempts to sue the Southern Poverty Law Center (SPLC) for defamation and to silence those who would criticize his abhorrent views. SPLC is a vocal critic of McInnes. As pled in the

---

[2] Gavin McInnes, *Proud Boys Declare Victory in Berkeley,* Taki's Magazine (Apr. 20, 2017), https://www.takimag.com/article/proud_boys_declare_victory_in_berkeley_gavin_mcinnes/.
[3] Gavin McInnes, *The West is History*, Taki's Magazine (Aug. 3, 2017), https://www.takimag.com/article/the_west_is_history_gavin_mcinnes/.
[4] Gavin McInnes, *Wonder Woman Makes You Wonder About Women*, Taki's Magazine (June 8, 2017), https://www.takimag.com/article/wonder_woman_makes_you_wonder_about_women_gavin_mcinnes/.
[5] McInnes, *The West is History*.
[6] Gavin McInnes, *They Call Americans Monsters*, Taki's Magazine (July 13, 2017), https://www.takimag.com/article/they_call_americans_monsters_gavin_mcinnes/.
[7] Gavin McInnes, *Turning a Blind Eye*, Taki's Magazine (May 4, 2017), https://www.takimag.com/article/turning_a_blind_eye_gavin_mcinnes/.

Complaint, SPLC has described McInnes as a "neo-masculine reactionary" and a "self-described Islamophobe," and has referred to his statements as extremist, Islamophobic, "blatantly misogynistic," and "anti-gay." *See, e.g.*, Compl. ¶¶ 150, 159, 223, 234, 291.

SPLC's statements, taken in context, lie at the very core of the First Amendment's protections. "[I]t is a prized American privilege to speak one's mind," and "this opportunity is to be afforded for 'vigorous advocacy' no less than 'abstract discussion.'" *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) (quoting *NAACP v. Button*, 371 U.S. 415, 429 (1963)). This includes the right to call McInnes anti-gay, a misogynist, an Islamophobe, and otherwise bigoted.

Because the First Amendment reflects our national commitment to rigorous and open debate, it requires specific safeguards in defamation actions. Two of those safeguards require dismissal of this case. First, SPLC's alleged statements are protected statements of opinion and so are not capable of defamatory meaning. Second, McInnes, a public figure, fails to plausibly allege that SPLC acted with actual malice, as required under longstanding Supreme Court precedent. For each of these reasons, McInnes' defamation claim should be dismissed.

These defects are equally fatal to McInnes' other claims—tortious interference with economic advantage, false light invasion of privacy, and aiding and abetting employment discrimination—all of which seek to sanction SPLC for protected expression. Notwithstanding their various labels, McInnes' claims are all "formulae for the repression of expression." *N.Y. Times*, 376 U.S. at 269. Not one has "talismanic immunity from constitutional limitations"; rather, each "must be measured by standards that satisfy the First Amendment." *Id.*

Measured against those standards, McInnes claims fail. This Court should decline to permit McInnes to use the judiciary as a forum for intimidating speakers into silence on matters

of immense public concern. In light of its fatal flaws, the Complaint should be dismissed with

prejudice.

## ARGUMENT

**I.      The First Amendment protects the right to condemn repugnant views.**

The United States has a "profound national commitment to the principle that debate on

public issues should be uninhibited, robust, and wide-open[.]" *N.Y. Times*, 376 U.S. at 270.  The

First Amendment was designed "to assure unfettered interchange of ideas for the bringing about

of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484

(1957). Our national commitment to public discourse—and our First Amendment rights—"must

embrace all issues about which information is needed or appropriate to enable the members of

society to cope with the exigencies of their period." *Curtis Publ'g Co. v. Butts*, 388 U.S. 130,

147 (1967) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 102 (1940)). Tragically, today those

exigencies continue to include hatred, bigotry, and racism that can profoundly harm transgender

people, immigrants, religious minorities, and people of color.

Public discussion about hateful groups, white supremacy, and related abhorrent

ideologies are protected by the First Amendment. Discussion of these issues "is a social

necessity required for the 'maintenance of our political system and an open society.'" *Id.* at 149

(quoting *Time, Inc. v. Hill*, 385 U.S. 374, 389 (1967)). And such discussion "may well include

vehement, caustic, and sometimes unpleasantly sharp attacks" on public figures. *N.Y. Times*, 385

U.S. at 270.

Because "[w]hatever is added to the field of libel"—or tortious interference, false light,

and the like—"is taken from the field of free debate," such claims must "be measured by

standards that satisfy the First Amendment." *Id.* at 269, 272. This Complaint, measured against

those standards, fails to state a claim for two independent reasons: because SPLC's alleged

statements constitute expressions of opinion and because McInnes failed to plausibly allege actual malice.[8]

## II.      A defamation claim based on statements of opinion or disclosed facts that criticize hateful and bigoted views cannot satisfy the First Amendment.

SPLC's alleged statements—including referring to McInnes or his statements as extremist, Islamophobic, "blatantly misogynistic," "anti-gay," and "reactionary"—are not actionable under the First Amendment. Had SPLC referred to McInnes as a "white supremacist," "Alt-Right figure," or "hate figure"—which McInnes fails to allege that SPLC in fact did—those statements would equally fail to give rise to a claim of defamation because they would constitute expressions of protected opinion.[9]

### A.      SPLC's alleged statements are protected expressions of opinion that are critical to public discourse.

"Under the First Amendment there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974). While statements of fact capable of defamatory meaning may be actionable, statements of opinion are not. *Id.* In order for a statement to be facially actionable in a defamation suit, it must be "sufficiently factual to be susceptible of being proved true or false." *Milkovich v. Lorain Journal C*o., 497 U.S. 1, 21 (1990).

---

[8] Although this brief focuses on McInnes' defamation claim, the Complaint fails to adequately state any of the other asserted claims for precisely the same reasons. *See N.Y. Times*, 376 U.S. at 269 (noting that insurrection, contempt, advocacy of unlawful acts, breach of the peace, obscenity, solicitation of legal business "and the various other formulae for the repression of expression" must all "be measured by standards that satisfy the First Amendment"); *see also Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53 (1988) (noting that the First Amendment standards governing defamation claims apply equally to intentional infliction of emotional distress claims).

[9] Notwithstanding the fact that the words "hate," "white supremacist," and "Alt-Right" appear a combined 219 times in the Complaint, McInnes fails to plead that any statement made by SPLC about him used those words.

McInnes alleges that SPLC's condemnation of him as misogynistic, anti-gay, and otherwise bigoted are statements of fact. But, as a matter of law, these statements are expressions of opinion. As the Supreme Court has recognized, "intemperate, abusive, or insulting language" can "be an effective means to make [a] point." *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 282 (1974). "[T]o use loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies—like 'unfair' or 'fascist'—is not to falsity facts." *Id.* at 284. Rather, it is a way to "demonstrate . . . strong disagreement with the views" being described, and it is protected. *Id.*[10]

This is true of each of the terms SPLC has allegedly used to describe McInnes: they are nonactionable statements of opinion. The Eleventh Circuit has held that heated discussions of opinion have "traditionally added much to the discourse of our Nation." *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002). And it has held that referring to a coach's treatment of one of his players as "homophobic taunting"—much like SPLC's condemnation of McInnes as "anti-gay"—constitutes "an opinion" and so is "not actionable in a defamation suit." *Turner v. Wells*, 879 F.3d 1254, 1264 (11th Cir. 2018).[11]

Similarly, the Second Circuit has held that "the use of 'fascist' . . . and 'radical right' as political labels . . . cannot be regarded as having been proved to be statements of fact[.]" *Buckley*

---

[10] While the Supreme Court in *Old Dominion* held that "[e]xpression of such an opinion, even in the most pejorative terms, is protected under federal labor law," *id.*, it recognized that a court's duty to insure that a claim does not improperly intrude "on the field of free expression" is the same under the First Amendment, *id.* (quoting *N.Y. Times*, 376 U.S. at 285).

[11] The court additionally rejected "Turner's argument that another reader might come to a different conclusion upon review of the facts—that the gift was a joke," and held that this possibility "does not make the Defendants' assessment of Turner's acts anything other than opinion." *Id.* The same is true of McInnes' allegations that the incidents and statements SPLC describes as bigoted merely reflect his humor. *See, e.g.*, Compl. ¶¶ 11, 205.

*v. Littell*, 539 F.2d 882, 893 (2d Cir. 1976). The Seventh Circuit has refused to recognize a defamation claim where the defendants described a public school principal as "very insensitive to the needs of our community, which happens to be totally black," called her statements "very racist," and described her as "a racist." *Stevens v. Tillman*, 855 F.2d 394, 400 (7th Cir. 1988). And the Third Circuit has held that statements asserting that a plaintiff "misrepresents her teachings and foments religious hatred and bigotry" cannot give rise to a claim of libel, in part because "[i]t is hard to imagine an animated [political] discussion" without such statements. *Rutherford v. Dougherty*, 91 F.2d 707, 708 (3d Cir. 1937).

In holding that "fascist" cannot give rise to a defamation claim in *Buckley*, the Second Circuit recognized that, when individuals are involved in "an exchange, however heated, about systems of government, . . . democracy and totalitarianism . . . the widest latitude for debate in the interests of the First Amendment must be furnished." *Buckley*, 539 F.2d at 889. "In the realm of . . . political belief, sharp differences arise" and "the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader . . . at times, resorts to . . . vilification[.]" *Id.* And this is protected by the First Amendment.

"Our nation [has a] long history of robust public expression, including the use of abusive rhetoric." *Ward v. Zelikovsky*, 136 N.J. 516, 535 (1994). "Americans have been hurling epithets at each other for generations. From charging 'Copperhead' during the Civil War, we have come down to 'Racist', 'Pig', 'Fascist' . . . and such." *Id.* (quoting *Raible v. Newsweek*, 341 F. Supp. 804, 807 (W.D. Pa. 1972)). "[T]o restrict too severely the right to express such opinions, no matter how annoying or disagreeable, would be [a] dangerous curtailment of a First Amendment right. Individuals should be able to express their views about the prejudices of others without the chilling effect of a possible lawsuit in defamation resulting from their words." *Id.* (quoting *Rybas*

*v. Wapner*, 457 A.2d 108, 110 (Pa. 1983) (holding that "anti-Semitic" is not actionable)). *See also Vail v. The Plain Dealer Publ'g Co*., 649 N.E.2d 182, 186 (Ohio 1995) (holding that "[e]ngaging in 'an anti-homosexual diatribe' and fostering 'homophobia'" are nonactionable as "one person's attempt to persuade public opinion").

### B. SPLC's alleged statements are protected expressions of opinion because they may be interpreted differently by different audiences.

The statements McInnes challenges as defamatory concern labels that mean different things to different people—and therefore squarely fall within the scope of First Amendment protection. In addition to reflecting our nation's commitment to full-throated debate, the Second Circuit's holding in *Buckley*, that calling someone a "fascist" is protected opinion, was based in part on "the tremendous imprecision of the meaning and usage of the[ ] term[] in the realm of political debate[.]" 539 F.2d at 893. Similarly, in *Stevens*, the Seventh Circuit explained that, "[w]hen a word acquires a strong meaning it becomes useful in rhetoric" and "there is a tendency to invoke the word for its impact rather than to convey a precise meaning." *Stevens*, 855 F.2d at 402. Applying that logic to the word "racist," the court found that it has evolved over time to mean everything from "a believer in the superiority of one's own race, often a supporter of slavery or segregation, or a fomenter of hatred among the races," to "[h]e is neither for me nor of our race," "she is condescending to me, which must be because of my race" and "she thinks all black mothers are on welfare, which is stereotypical." *Id.* Given this variety of meanings, the court determined that the word could not sustain a defamation claim. *Id.*

Courts have also applied this logic to words like "Neo-Nazi," which is close to the "Alt-Right" and "white supremacist" labels McInnes seeks to challenge here. One court held that the "term 'Neo-Nazi' in and of itself is a constitutionally protected opinion." *Grutzmacher v. Chicago Sun-Times, Inc*., No. 91 L 06561, 1994 WL 742257, at *5 (Ill. Cir. Ct. Sept. 28, 1994).

While recognizing that "there is probably a set of facts underlying one's choice to label someone a 'Neo-Nazi'" and that the term "is used generally to describe a person with White Supremacist and anti-Semitic views," the court noted that "[t]here is no dictionary meaning for the word" and that "[o]ne person may consider someone a 'Neo-Nazi,' while another person may not." *Id.* Accordingly, the court refused to recognize a defamation claim on the basis of that term. *Id.*

Thus, "to call a person a bigot or other appropriate name descriptive of his political, racial, religious, economic or sociological philosophies gives no rise to an action for libel." *Raible*, 341 F. Supp. at 806, 807 (holding that statements describing an individual as "angry, uncultured, crude, violence prone, hostile to both rich and poor, and racially prejudiced" are not actionable). "Standing alone . . . [an accusation of bigotry] is an opinion." *Puccia v. Edwards*, No. 98-00065, 1999 WL 513895, at *3 (Mass. Super. Apr. 28, 1999). *See also Squitieri v. Piedmont Airlines, Inc.*, No. 3:17CV441, 2018 WL 934829, at *4 (W.D.N.C. Feb. 16, 2018) ("racist" is nonactionable opinion); *Hanson v. Cty. of Kitsap, Wash.*, No. 13-5388 RJB, 2014 WL 2931817, at *6 (W.D. Wash. June 30, 2014) (same for "jerk" and "sexist"); *Tillett v. BJ's Wholesale Club, Inc.*, No. 3:09-CV-1095-J-34MCR, 2010 WL 11507322, at *4 (M.D. Fla. July 30, 2010) (same for arguing that a plaintiff is associated with "abusive, hostile and intimidating" symbols or ideologies and thereby "'insinuat[ing]' that he is racist"); *Jackson v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC*, No. 2:07-CV-461-JEO, 2009 WL 10704261, at *39 (N.D. Ala. Feb. 23, 2009) (same for "racist" and "radical"); *Martin v. Brock*, No. 07C3154, 2007 WL 2122184, at *3 (N.D. Ill. July 19, 2007) (same for "racist"); *Smith v. Sch. Dist. of Philadelphia*, 112 F. Supp. 2d 417, 429 (E.D. Pa. 2000) (same for "racist and anti-Semitic"); *Condit v. Clermont Cty. Review*, 110 Ohio App. 3d 755, 760 (1996) (same for "fascist" and "anti-Semite").

10

McInnes' claim rests squarely on SPLC's alleged descriptions of him as a misogynist, anti-gay, and otherwise bigoted. As a matter of law, these statements are opinion and thus not actionable. To hold otherwise would be to ignore the First Amendment right to condemn abhorrent views.

## III.        The First Amendment requires an allegation of actual malice.

Even if McInnes had alleged that SPLC's statements implicitly or explicitly included or suggested the existence of defamatory facts, which he has not, the Complaint should be dismissed for the additional reason that McInnes fails to plausibly allege actual malice. In order to afford the "breathing space essential" to the "fruitful exercise" of First Amendment rights, the Supreme Court has held that plaintiffs who "are properly classed as public figures . . . may recover for injury to reputation only on clear and convincing proof that [a] defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz*, 418 U.S. at 342 (quotation marks omitted) (referring to the "actual malice" standard set forth in *N.Y. Times*, 376 U.S. 254); *see also Curtis*, 388 U.S. at 130 (establishing the same standard for public figures).

Public figures are individuals who are "notori[ous for] . . . their achievements or the vigor and success with which they seek the public's attention." *Gertz*, 418 U.S. at 342. "In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Id.* at 351. In other cases, "an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.*

As a co-founder of Vice Media, a "political commentator who has been working in media for a quarter century," and a "talk show host[]," Compl. ¶ 24, McInnes satisfies the former definition. And, as the focus of much public discussion specifically about his views on race,

11

immigration, sex, gender, and other issues relevant to SPLC's statements, McInnes also satisfies the latter definition. *See, e.g., id.* ¶¶ 11 [*sic*]–29, 185–88 (alleging that McInnes has been the subject of reporting by the New York Times and the Daily Beast about his affiliation with the Proud Boys and his "crass, contrarian bigotry").

"[S]uch persons assume special prominence in the resolution of public questions," *Gertz*, 418 U.S. at 351, and "our citizenry has a legitimate and substantial interest in [their] conduct." *Milkovich*, 497 U.S. at 15. They must therefore demonstrate "actual malice" before recovering for defamation. *Gertz*, 418 U.S. at 342. At the pleading stage, this means that a plaintiff must plead a plausible factual predicate for actual malice. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703–04 (11th Cir. 2016).

*New York Times v. Sullivan*, which established the standard for defamation cases that particularly threaten First Amendment freedoms, is instructive here. In *New York Times v. Sullivan,* the Supreme Court considered a defamation claim brought by a commissioner of Montgomery, Alabama against four Black members of the clergy and the New York Times for a full-page advertisement published in the paper. 376 U.S. at 256. The advertisement stated that the efforts of thousands of Black students "engaged in widespread non-violent demonstrations in positive affirmation of the right to live in human dignity as guaranteed by the U.S. Constitution and the Bill of Rights" were "being met by an unprecedented wave of terror by those who would deny and negate that document which the whole world looks upon as setting the pattern for modern freedom." *Id.* In paragraphs that followed, the advertisement described specific instances to illustrate the wave of terror. *Id.* at 257.

The Supreme Court stated that, "as an expression of grievance and protest on one of the major public issues of our time, [the advertisement] would seem clearly to qualify for the

constitutional protection," but recognized that the case presented the question of "whether [the advertisement] forfeits that protection by the falsity of some of its factual statements and by its alleged defamation of respondent." *Id.* at 271. And the answer, the Court concluded, was no. Although it was "uncontroverted that some of the statements contained in the two paragraphs were not accurate descriptions," *id.* at 258, the Supreme Court determined that the defamation claim could not stand. The Court held that "[t]he interest of the public here outweighs the interest of appellant or any other individual." *Id.* at 272. And the Court established the actual malice standard that governs in this case: where public figures bring defamation claims, they must establish that the challenged statements were made "with knowledge that [the statements were] false or with reckless disregard of whether [they were] false or not." *Id.* at 280.

Recognizing the danger that defamation claims brought by public figures pose to public discourse, the *New York Times* Court went so far as to review the evidence in the case itself to hold that, given the new standard it had announced, remanding for a new trial would be futile. *Id.* at 289. The Court held that the allegations and evidence before it—including allegations that the "advertisement was not 'substantially correct,'" allegations and evidence of "the Times' failure to retract upon respondent's demand, although it later retracted upon [another person's] demand," and evidence showing "that the Times published the advertisement without checking its accuracy against the news stories in the Times' own files"—could not establish actual malice. *Id.* at 286–87. The Court held that "even if the advertisement was not 'substantially correct,'" the opinion it expressed "was at least a reasonable one, and there was no evidence to impeach the witness' good faith in holding it." *Id.* at 286. The Court also refused to credit the Times' eventual retraction of the advertisement as evidence of malice, instead holding that the Times had given a reasonable explanation for the retraction. *Id.* at 287. And the Court held that the "evidence that

13

the Times published the advertisement without checking its accuracy" against its news stories at most established negligence, not actual malice. *Id.* at 288.

McInnes' attempt to allege actual malice is far less robust than the allegations and evidence before the Supreme Court in *New York Times*. McInnes alleges only that SPLC's statements are "purposefully deceitful and intended to tarnish [McInnes'] reputation." *See, e.g.,* Compl. ¶ 14. This conclusory allegation cannot satisfy the pleading standard. *See Michel*, 816 F.3d at 703–04 (affirming dismissal of complaint under Rule 12(b)(6) for failure to allege "actual malice" beyond a mere conclusory allegation about the defendant's state of mind).

## CONCLUSION

For the foregoing reasons, this Court should dismiss this case with prejudice.

Respectfully submitted,

*/s/ Randall C. Marshall*

| | |
|---|---|
| Vera Eidelman | Randall C. Marshall |
| Brian Hauss | Brock Boone |
| Esha Bhandari | ACLU Foundation of Alabama |
| Sarah Hinger | P.O. Box 6179 |
| Nusrat J. Choudhury | Montgomery, AL 36106 |
| ACLU Foundation | T. 334.420.1741 |
| 125 Broad Street, 18th Fl. | rmarshall@aclualabama.org |
| New York, NY 10004 | bboone@aclualabama.org |