UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GAVIN MCINNES,<br><br>*Plaintiff*,<br><br>- *vs.*-<br><br>THE SOUTHERN POVERTY LAW CENTER, INC.,<br><br>*Defendant*. | CIVIL ACTION NO.<br>2:19-cv-98-MHT-GMB |

**PLAINTIFF'S OPPOSITION TO THE MOTION OF THE AMERICAN CIVIL LIBERTIES UNION, THE AMERICAN CIVIL LIBERTIES UNION OF ALABAMA, AND THE CENTER FOR CONSTITUTIONAL RIGHTS TO FILE AN AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Gavin McInnes ("**Plaintiff**") respectfully files this opposition to the Motion by The American Civil Liberties Union and The American Civil Liberties Union of Alabama (together, "**ACLU**") and The Center for Constitutional Rights ("**Center**") to file an amicus curiae Brief in support of the Motion of the Southern Poverty Law Center, Inc. ("**SPLC**") to Dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 17).

As ACLU and Center (together, "**Movants**") declare in their Brief (ECF 18), "[t]he ACLU and the ACLU of Alabama have frequently appeared before courts throughout the country in First Amendment cases, both as direct counsel and as amicus curiae." Movant Center is also a frequent litigant in such cases. Indeed, , it appears that ACLU and Center consider themselves entitled to place their thumbs on the scale in any litigation before this Court that putatively involves the First Amendment, despite the lack of any actual need for their intervention, the alignment of issues involved, or the burden imposed on the opposing party

1

(and this Court).  Movants' sense of entitlement is typified here –where the defendant itself is essentially a massive, experienced constitutional law firm, that already has the benefit of distinguished and experienced outside counsel.  Certainly, the SPLC is more than adequately capable of fending for itself and the principles it purports to represent.  Finally, it is respectfully submitted that justice militates against adding three more civil-rights litigation "machines" to opposite side of the "v" with one, lone individual on the other  – particularly  at the motion to dismiss stage.

## ARGUMENT

Leave to permit an amicus brief is "is seldom appropriate at the level of the trial level where the parties are adequately represented by experienced counsel." *ForestKeeper v. Elliott*, 50 F. Supp. 3d 1371, 1380 (E.D. Cal. 2014), citing *Ryan*.  See also, *Donovan v. Gillmor*, 535 F. Supp. 154, 159 (N.D. Ohio 1982) ("the Court is of the opinion that counsel for both parties are more than adequately representing the interests of their clients and that counsel do not need supplementing assistance"); *United States v. Ahmed*, 788 F. Supp. 196 (S.D.N.Y.), *aff'd*, 980 F.2d 161 (2d Cir. 1992) ("In this case, defendant's interests are adequately represented by his counsel").  Movants cite *Ryan v. Commodity Futures Trading Com'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) to the effect that amicus briefs "should normally be allowed when the amicus has an interest in some other case that may be affected by the decision in the present case . . . or when the amicus has <u>unique information or perspective</u> that can help the court beyond the help that the lawyers for the parties are able to provide." (Emphasis added).  Here, Movants have no "unique information," the dispute is personal, between Plaintiffs and the SPLC, nor is Movants' "perspective" "unique" – the SPLC and Movants are all equally (and highly) skilled First Amendment right "advocates". Moreover, in *Ryan*, , the Seventh Circuit actually **affirmed** the

district court's denial of a motion to file an amicus brief. As the Seventh Circuit explained, in passage whose second half Movants quote:

> The vast majority of amicus curiae briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed. They are an abuse. The term "amicus curiae" means friend of the court, not friend of a party. *United States v. Michigan*, 940 F.2d 143, 164-65 (6th Cir.1991). We are beyond the original meaning now; an adversary role of an amicus curiae has become accepted. Id. at 165. But there are, or at least there should be, limits. Cf. *New England Patriots Football Club, Inc. v. University of Colorado*, 592 F.2d 1196, 1198 n. 3 (1st Cir.1979). . . .
>
> The amicus brief [here] does not tell us anything we don't know already. It adds nothing to the already amply proportioned brief of the petitioner.
>
> The bane of lawyers is prolixity and duplication . . . . In an era of heavy judicial caseloads and public impatience with the delays and expense of litigation, we judges should be assiduous to bar the gates to amicus curiae briefs that fail to present convincing reasons why the parties' briefs do not give us all the help we need for deciding the appeal.

*Ryan*, 125 F.3d at 1063. Here, SPLC's massive submission in support of its motion to dismiss (including a 60-page Brief and 23-page addendum) is more than "amply proportioned" and leaves no doubt it is inadequately represented."

The Court is aware that SPLC is, essentially, a law firm, and – as is well known – a very effective one, and one endowed with phenomenal financial resources. SPLC states on its website that, "[f]or more than four decades, we've won landmark cases that brought systemic reforms in the Deep South. . . . with a staff of more than 100 lawyers and advocates . . . " SPLC website, "What we Do: Seeking Justice," found at https://www.splcenter.org/seeking-justice, last visited on April 15, 2019. Certainly, an organization that describes itself in such a manner needs no outside assistance to represent itself adequately in this suit.

Still, SPLC's success and resources has not made it shy about engaging extensive outside assistance. Most recently, SPLC has enhanced its highly capable and abundant in-house

district court's denial of a motion to file an amicus brief. As the Seventh Circuit explained, in passage whose second half Movants quote:

> The vast majority of amicus curiae briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed. They are an abuse. The term "amicus curiae" means friend of the court, not friend of a party. *United States v. Michigan*, 940 F.2d 143, 164-65 (6th Cir.1991). We are beyond the original meaning now; an adversary role of an amicus curiae has become accepted. Id. at 165. But there are, or at least there should be, limits. Cf. *New England Patriots Football Club, Inc. v. University of Colorado*, 592 F.2d 1196, 1198 n. 3 (1st Cir.1979). . . .
>
> The amicus brief [here] does not tell us anything we don't know already. It adds nothing to the already amply proportioned brief of the petitioner.
>
> The bane of lawyers is prolixity and duplication . . . . In an era of heavy judicial caseloads and public impatience with the delays and expense of litigation, we judges should be assiduous to bar the gates to amicus curiae briefs that fail to present convincing reasons why the parties' briefs do not give us all the help we need for deciding the appeal.

*Ryan*, 125 F.3d at 1063. Here, SPLC's massive submission in support of its motion to dismiss (including a 60-page Brief and 23-page addendum) is more than "amply proportioned" and leaves no doubt it is inadequately represented."

The Court is aware that SPLC is, essentially, a law firm, and – as is well known – a very effective one, and one endowed with phenomenal financial resources. SPLC states on its website that, "[f]or more than four decades, we've won landmark cases that brought systemic reforms in the Deep South. . . . with a staff of more than 100 lawyers and advocates . . . " SPLC website, "What we Do: Seeking Justice," found at https://www.splcenter.org/seeking-justice, last visited on April 15, 2019. Certainly, an organization that describes itself in such a manner needs no outside assistance to represent itself adequately in this suit.

Still, SPLC's success and resources has not made it shy about engaging extensive outside assistance. Most recently, SPLC has enhanced its highly capable and abundant in-house

counsel by engaging the assistance of another firm, namely the Philadelphia-based law firm of Ballard Spahr to assist in its defense in two other lawsuits that while far from identical to this one, are substantial similar to it, as reported in a February 5, 2019 article:

> Facing two major lawsuits that assert multiple state and federal claims, including allegations that the SPLC has trespassed the Racketeering Influenced and Corrupt Organizations (RICO) Act, the leftist hate group has retained a big-hitting defamation attorney to defend itself against one of them.
>
> That regardless, the group's long reign of terrifying power over the media and who gets designated as an "extremist" or "hate group" might be ending. Its own extremist views and attacks on mainstream conservatives as "haters" long ago wrecked the undeserved reputation it had.
>
> But now, some of the nearly $500 million it has in the bank might wind up in the pockets of its victims.
>
> **Big-time Firm**
> PJ Media has reported that the SPLC hired Chad Bowman of the Ballard Spahr law giant to fight a lawsuit filed by lawyer Glenn K. Allen, who claims that the SPLC and its two top torpedoes, Heidi Beirich and Mark Potok, smeared him as a "neo-Nazi."
>
> In turn, he alleges, Baltimore City fired him from his job as an independent contract attorney. . . .
>
> The firm for which Bowman toils is a major-league outfit with 650 lawyers in 15 offices.

R. Cort Kirkwood, "SPLC Hires Top Defamation Attorney to Defendant Against Lawyer's Claim," The New American, Feb. 5, 2019, found at https://www.thenewamerican.com/usnews/crime/item/31409-splc-hires-top-defamation-attorney-to-defend-against-lawyer-s-claim, last visited April 15, 2019.

Although Plaintiff's claims differ in important respects from those in the other two lawsuits, all three are predicated on what the article's author referred to as SPLC's abusive "hate" designations. Further, SPLC's motion to dismiss the comparable claims in those cases almost identical to its motion here. Plaintiff, in contrast, is represented by a law firm that is several orders of magnitude smaller than Ballard Spahr, along with a solo practitioner as local

counsel, and Plaintiff's financial resources are dwarfed by those of defendant – without even accounting for how SPLC's tortious acts, as alleged in the Complaint, have undercut his ability to support himself, much less to engage in litigation. In short, Plaintiff is already substantially outgunned in terms of available "hands" and means to prosecute his case.

In the two months that SPLC has had to prepare its 60-page Brief, 23-page Addendum and 90-paragraph counsel's Declaration (with 21 exhibits), SPLC had every opportunity to include any argument it felt was warranted given the absence of page limitations on submissions in this Court. It is difficult to believe justice would be served by allowing three more organizations, each of which is essentially an additional law firm, to pile onto SPLC's attempt to rid itself of one man's four-count lawsuit on the ground of "adequacy."

Movants' application to add to the filings in a case that is not past the pleading stage, and yoke Plaintiff with the additional burden of answering not one, but two sets of briefs, should also be denied based on Movants' unjustifiable delay in bringing this application. In exercising its discretion to permit an amicus brief under Rule 29, the Court should consider the delay such a filing would work on the disposition of the matter. *Ysleta Del Sur Pueblo v. El Paso Cty. Water Improvement Dist. No. 1*, 222 F.3d 208 (5th Cir. 2000) (granting of motion would result in needless delay of case's disposition). See also, *Peterson v. United States*, 41 F.R.D. 131, 135 (D. Minn. 1966) (intervention would only serve to unduly delay the disposition of the action).

Here SPLC asked for and was granted sixty (60) days to file and serve its response to the Complaint – nearly triple the amount of time presumptively set by the Federal Rules of Civil Procedure. Given the amount of SPLC's time, and without speculating whether the SPLC, ACLU and Center -- allied civil rights organizations – exchanged drafts and coordinated the

timing of their submissions, the Court cannot be asked to believe that it was not until Movants read and evaluated *SPLC's* hundreds of pages of submissions that they decided to request leave to file an amicus brief, who filed their proposed brief just days later.  If Movants had decided, as they obviously had, to come into this case in support of their longtime comrade-in-arms, SPLC, they owed a duty of candor to this Court and courtesy to Plaintiff to request permission to do so when that decision was made. Instead, they chose, presumably for tactical reasons, to phase their coordinated attacks on the Complaint.

Finally, Movants argue that their interest in this case is sufficiently enunciated merely because, as they claim, "this case involves a significant First Amendment issue: the preservation of a pleading standard in defamation cases that satisfies the First Amendment." (Movant's Motion at 3.) As a threshold matter, Plaintiff disputes Movants' characterization of the Complaint. Plaintiff does not ask the Court to change the pleading standard for defamation cases, but merely to apply that standard to SPLC's many statements of purported fact. Indeed, Movants' characterization of Plaintiff's claims as ones that would impact the pleading is as insidious as it is self-serving. Movants' argument that the Court accept, at face value, their formulation of this issue as a valid ground for granting the relief they demand, will undoubtedly cause Movants to characterize this Court's decision, should it granted such relief, as having already raised the bar a plaintiff must overcome to maintain a  defamation claim in the context a constitutional challenge – an unjustified shifting of the burden on plaintiff.

Movants have not identified any special abilities or expertise that is not already available to the SPLC, as evidence by the sophistication and detail of SPLC's briefing of the defamation issue.  Movants' position is simply that they are the ACLU – or are with the ACLU – and the ACLU always has a place at the table in what it determines to be civil rights litigation in the

6

Middle District of Alabama. But it is hard to see how Movants' participation could be "that of an impartial friend of the court and not that of an adversary party in interest in the litigation," as this Court described an improper amicus role in *Wyatt By & Through Rawlins v. Hanan*, 868 F. Supp. 1356, 1360 (M.D. Ala. 1994) (quoting *United States v. State of Mich.*, 940 F.2d 143, 165 (6th Cir. 1991); internal quotation marks omitted). "The amici will not be prejudiced if the court only considers the parties' briefs in this case." *Maples v. Thomas*, No. 5:03-CV-2399-SLB-MHH, 2013 WL 5350669, at *5 (N.D. Ala. Sept. 23, 2013). For that reason alone, Movants' belated motion for leave to file an amicus brief in support of SPLC's motion to dismiss should be denied.

WHEREFORE, Plaintiff respectfully requests this Honorable Court deny Movants' motion for leave to file an amicus brief and to enter all orders necessary to effectuate the denial.

Respectfully submitted on this the 15th day of April, 2019.

/s/ G. Baron Coleman
By: Baron Coleman
ASB 9562-O67C

**BARON COLEMAN LAW FIRM**
PO Box 789
Montgomery AL 36101-0789
baroncoleman@gmail.com
334-625-9097

RONALD D. COLEMAN
LAUREN X. TOPELSOHN
**MANDELBAUM SALSBURG PC**
1270 Avenue of the Americas – Suite 1808
New York, NY 10020
rcoleman@lawfirm.ms
ltopelsohn@lawfirm.ms
212-776-1834

7

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 15, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF, which will then send a notification of such filing to the following:

Robert D. Segall
Shannon Holliday
Copeland, Franco, Screws & Gill, P.A.
P.O. Box 347
Montgomery, AL 36101-0347

                                            /s/ G. Baron Coleman

                                                OF COUNSEL