**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **GAVIN McINNES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:19-cv-00098-MHT-GMB** |
| **THE SOUTHERN POVERTY LAW** | ) | |
| **CENTER, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT SOUTHERN POVERTY LAW CENTER, INC.'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Shannon Holliday [ASB-5440-Y77S]
Robert D. Segall [ASB-7354-E68R]
Benjamin W. Maxymuk [ASB-9590-M67M]
COPELAND, FRANCO, SCREWS & GILL, P.A.
P.O. Box 347
Montgomery, AL 36101-0347
Telephone:  334-834-1180
Facsimile:  334-834-3172
Email:  holliday@copelandfranco.com
Email:  segall@copelandfranco.com
Email:  maxymuk@copelandfranco.com

**Attorneys for Defendant Southern
Poverty Law Center, Inc.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT .......................................................................................................1

I.     THE OPPOSITION'S CONCESSIONS NARROW THE ISSUES
REMAINING TO BE DECIDED BY THE COURT ......................................1

II.    McINNES FUNDAMENTALLY MISCONSTRUES APPLICABLE LAW ....................2

III.   NEW YORK SUBSTANTIVE LAW APPLIES ................................................5

IV.   McINNES FAILS TO STATE A DEFAMATION CLAIM ................................9

      A.    McInnes Fails to State a Defamation Claim Based on the Hate Group
Designation ...........................................................................................9

             1.    The Complaint Failed to Plead Facts Plausibly Establishing
Actual Malice .....................................................................9

             2.    The Hate Group Designation Constitutes a Non-Actionable
Expression of Opinion ......................................................15

             3.    The Hate Group Designation Is Not Of and Concerning
McInnes ............................................................................20

             4.    McInnes Acknowledges That, Under New York Law, the
Subsidiary Meaning Doctrine Bars His Specific Claims .........22

      B.    McInnes Fails to State a Defamation Claim Based on Any of the
Specific Claims ...................................................................................22

             1.    McInnes Has Failed to Plead Actual Malice with Respect to
Any of the Specific Claims ................................................23

             2.    The Specific Claims Fail for Other Reasons As Well ..............23

V.    McINNES'S "TAG ALONG" CLAIMS ALSO FAIL ....................................24

      A.    McInnes's "Tag Along" Claims Are Barred by *Hustler Magazine v.
Falwell* ...............................................................................................25

      B.    McInnes Fails to State a Claim for Tortious Interference .....................27

      C.    McInnes Fails to State a Claim for False Light Invasion of Privacy ....................30

D.      McInnes Fails to State a Claim for Violation of New York Labor Law................30

CONCLUSION.........................................................................................................................32

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................3, 10, 14, 29

*Bain v. Jockey Club Technology Services, Inc.*,
  No. 07-cv-80371, 2007 WL 9706995 (S.D. Fla. Nov. 29, 2007) ...........................................29

*Beck v. Deloitte & Touche*,
  144 F.3d 732 (11th Cir. 1998) ................................................................................2

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 561-63 (2007) ........................................................................ *passim*

*Ex parte Bole*,
  103 So. 3d 40 (Ala. 2012)...............................................................................20

*Broadspring, Inc. v. Congoo, LLC*,
  No. 13-cv-1866, 2014 WL 4100615 (S.D.N.Y. Aug. 20, 2014)...............................................6

*Chambers v. Cooney*,
  No. 07-cv-0373, 2007 WL 2493682 (S.D. Ala. Aug. 29, 2007)...............................................7

*Commw. of the N. Mar. I. v. Canadian Imperial Bank of Commerce*,
  21 N.Y.3d 55 (2013) .......................................................................................31

*Compuware Corp. v. Moody's Inv'rs Servs., Inc.*,
  499 F.3d 520 (6th Cir. 2007) .............................................................................25

*Conley v. Gibson*,
  355 U.S. 41 (1957)........................................................................................2

*Contemporary Mission, Inc. v. New York Times Co.*,
  842 F.2d 612 (2d Cir. 1988)...............................................................................4

*Cornett v. Gawker Media, LLC*,
  No. 2:13-cv-1579, 2014 WL 7330940 (D. Nev. Dec. 19, 2014) ...........................................6, 7

*Davis v. Boeheim*,
  22 N.E.3d 999 (N.Y. 2014)...........................................................................4, 16, 18

*Deutcsh v. Birmingham Post Co.*,
  603 So. 2d 910 (Ala. 1992)...............................................................................15

*Dunning v. Boyes*,
  351 So. 2d 883 (Ala. 1977)...............................................................................16

*Edwards v. Nat'l Audubon Soc'y, Inc.*,
  556 F.2d 113 (2d Cir. 1977)................................................................10, 11

*Elias v. Rolling Stone LLC*,
  872 F.3d 97 (2d Cir. 2017)........................................................................20

*Evans v. St. Lucie Cty. Jail*,
  448 F. App'x 971 (11th Cir. 2011) ............................................................29

*Fitts v. Minn. Mining & Mfg. Co.*,
  581 So. 2d 819 (Ala. 1991) ..........................................................................6

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
  194 F.3d 505 (4th Cir. 1999) ...............................................................26, 27

*Garrison v. Louisiana*,
  379 U.S. 64 (1964)......................................................................................14

*Glass v. S. Wrecker Sales*,
  990 F. Supp. 1344 (M.D. Ala. 1998) ........................................................8, 9

*Green Group Holdings, LLC v. Schaeffer*,
  No. 16-cv-145, 2016 WL 6023841 (S.D. Ala. Oct. 13, 2016)..................7, 8

*Harte-Hanks Commc'ns v. Connaughton*,
  491 U.S. 657 (1989)................................................................3, 4, 10, 13

*Henry v. Collins*,
  380 U.S. 356 (1965)................................................................................3, 4

*Hudson v. Bd. of Trs. of the Univ. of Ala.*,
  No. 2:07-cv-1542, 2009 WL 10687960 (N.D. Ala. Jan. 26, 2009) ..........2, 3

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988)........................................................25, 26, 27, 32

*Jackson v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. &
  Serv. Workers Int'l Union*,
  No. 2:07-CV-461, 2009 WL 10704261 (N.D. Ala. Feb. 23, 2009)............15

*Jankovic v. Int'l Crisis Grp.*,
  494 F.3d 1080 (D.C. Cir. 2007) ..........................................................21, 22

*Katz v. Gladstone*,
  673 F. Supp. 76 (D. Conn. 1987)................................................................6

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984)......................................................................................7

*Little v. Consol. Publ'g Co.*,
    83 So. 3d 517 (Ala. Civ. App. 2011) ...............................................................10, 11

*Lovingood v. Discovery Communications, Inc.*,
    No. 5:14-cv-00684, 2015 WL 5719169 (N.D. Ala. 2015)................................20, 21

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990)............................................................................................15, 16, 19

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*,
    No. 17-cv-7568, 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018) ............................11

*Minnifield v. Ashcraft*,
    903 So. 2d 818 (Ala. Civ. App. 2004) ..................................................................30

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)...............................................................................................13

*Nobles v. Boyd*,
    No. 7:14-cv-214, 2015 WL 2165962 (E.D.N.C. May 7, 2015) ...............................6

*Parsi v. Daioleslam*,
    890 F. Supp. 2d 77 (D.D.C. 2012) ......................................................................11

*Pinter v. Dahl*,
    486 U.S. 622 (1988)...............................................................................................31

*Ponder v. Lake Forest Prop. Owners Ass'n*,
    214 So. 339 (Ala. Ct. App. 2015) .........................................................................16

*Sanders v. Smitherman*,
    776 So. 2d 68 (Ala. 2000) .....................................................................................18

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012).....................................................................................14

*Shack v. Jenkins*,
    No. 2:16-cv-1626, 2017 WL 1017133 (N.D. Ala. Feb. 23, 2017).........................28

*Smith v. Huntsville Times Co.*,
    888 So. 2d 492 (Ala. 2004)...................................................................................30

*Snyder v. Am. Kennel Club*,
    661 F. Supp. 2d 1219 (D. Kan. 2009) ....................................................................6

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)...............................................................................................13

*Stapleton Studios, LLC v. City of New York*,
    810 N.Y.S.2d 657 (App. Div. 2006) .................................................26

*Thome v. Alexander & Louisa Calder Found.*,
    890 N.Y.S.2d 16 (App. Div. 2009) .............................................27, 29

*Torrance v. Morris Publ'g Grp., LLC*,
    656 S.E.2d 152 (Ga. Ct. App. 2007) .............................................11

*Triguero v. ABN AMRO Bank N.V.*,
    614 S.E.2d 209 (Ga. Ct. App. 2005) .............................................5

*Trojan Electric & Machine Co. v. Heusinger*,
    557 N.Y.S.2d 756 (App. Div. 1990) ..............................................27

*Waddell & Reed, Inc. v. United Inv'rs Life Ins. Co.*,
    875 So. 2d 1143 (Ala. 2003) ......................................................27

*Weakley v. Roberts*,
    No. 3:16-cv-00403, 2017 WL 7201526 (N.D. Ala. Mar. 7, 2017) .........................26

*Williams v. A.L. Williams & Associates, Inc.*,
    555 So. 2d 121 (Ala. 1989) .......................................................8

## Statutes & Other Authorities

2 Ala. Pers. Inj. & Torts § 12:28 (2014 ed.) ........................................30

Federal Rule of Civil Procedure 12(b)(6) ...........................................1

N.Y. Exec. Law § 296(6) ...........................................................31

N.Y. Labor Law § 201-d ............................................................30

RESTATEMENT (FIRST) OF CONFLICTS § 377 ............................................3, 6

RESTATEMENT (SECOND) OF CONFLICTS § 150 ...........................................7

RESTATEMENT (SECOND) OF TORTS § 564 ..............................................22

U.S. Const. Amend. I ........................................................... *passim*

vi

Defendant SPLC[1] respectfully submits this Reply in support of its motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and states as follows:

## PRELIMINARY STATEMENT

In its Motion to Dismiss and Memorandum (the "Motion" or "Mot."), D.E. 17, SPLC demonstrated that Plaintiff Gavin McInnes's Complaint fails to state a claim on which relief can be granted and should be dismissed with prejudice.  McInnes's Opposition (the "Opposition" or "Opp."), D.E. 32, is notable for two things: (1) its concessions on many of the key legal issues before the Court; and (2) the extent to which it either misunderstands or misconstrues controlling legal principles.  Those concessions and legal errors underscore why dismissal with prejudice is warranted.

## ARGUMENT

**I.    THE OPPOSITION'S CONCESSIONS NARROW THE ISSUES
       REMAINING TO BE DECIDED BY THE COURT**

To his credit, McInnes expressly concedes a number of key legal issues before the Court on this Motion.  These include:

- That he is a public figure and therefore must plead facts plausibly establishing constitutional "actual malice" in order to state a claim for defamation.  *See* Opp. at 61 ("Plaintiff acknowledges that he is a public figure.").

- That, *if* New York law applies:

  o  His tortious interference and false light claims must be dismissed, Opp. at 24 ("New York law does not recognize two of McInnes's causes of action, those for tortious interference and false light invasion of privacy.");

  o  New York law offers absolute protection for opinions, Opp. at 21-22 (acknowledging that "New York's law [on opinion] is broader and more protective of speech than" even the First Amendment);

---

[1] Capitalized terms not otherwise defined in this Reply have the meanings ascribed to them in the Motion.

    ○   The Hate Group Designation[2] constitutes non-actionable opinion under New York law, Opp. at 53-54 (conceding that New York law views "loose and ambiguous" descriptions such as "hate group" as non-actionable and arguing only that "[t]his is not New York"); and

    ○   The Specific Claims (*i.e.*, McInnes's defamation claims based on statements other than describing the Proud Boys as a hate group) must be dismissed under New York's subsidiary meaning doctrine if his claim based on the Hate Group Designation fails, Opp. at 33 (acknowledging dispositive significance of New York's subsidiary meaning doctrine).

•    That, regardless of what law applies, the relevant context for assessing the statements at issue includes hyperlinked materials such as the Proud Boys Page. Opp. at 13, 39, 56-58, 62 (relying on the Proud Boys Page and other hyperlinks in the challenged publications).

These concessions narrow the issues for decision, and their significance is discussed in more detail in the appropriate sections below.

## II.    McINNES FUNDAMENTALLY MISCONSTRUES APPLICABLE LAW

What the Opposition does not concede, it misunderstands. These misstatements of applicable law begin at the beginning, with the Opposition's rendition of the standard of review. Opp. at 17-18. Specifically, McInnes grounds his Opposition in the now discredited standard, first articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that a motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." Opp. at 18 (citing *Beck v. Deloitte & Touche*, 144 F.3d 732, 735-36 (11th Cir. 1998)). The Supreme Court, of course, expressly abrogated that standard in *Bell Atlantic Corp. v. Twombly*. *See* 550 U.S. 544, 561-63 (2007) ("[T]his famous observation has earned its retirement."); *see also, e.g.*, *Hudson v. Bd. of Trs. of the Univ. of Ala.*, No. 2:07-cv-1542, 2009 WL 10687960, at *2 (N.D. Ala. Jan. 26, 2009) (rejecting the "no set of facts" formulation and noting

---

[2] In its Motion, SPLC used the defined term "Hate Group Claim" to refer to McInnes's defamation claim based on SPLC's description of the Proud Boys as a hate group. In the Opposition, McInnes uses the term "Hate Group Designation" to refer to the same claim.

that *Twombly* "clearly raised the threshold for the sufficiency of factual allegations required in a complaint"). The plausibility standard articulated in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), not the discredited "no set of facts" standard urged by McInnes, applies here.

McInnes also errs on choice of law. The Opposition urges that, under Alabama's choice of law rules, a defamation case is governed by the law of the "place of publication," which McInnes simply assumes corresponds to the location of the publisher. Only the first half of that formulation (*i.e.,* that Alabama applies the law of the "place of publication") is correct. As explained in more detail in Section III *infra*, the "place of publication" for defamation purposes is the place where the act of publication is *completed*—*i.e.*, where the communication is <u>received</u>—and where the alleged tort is *committed*—*i.e.*, where the plaintiff suffers damages. *See, e.g.*, RESTATEMENT (FIRST) OF CONFLICTS § 377. In the context of multistate defamation, moreover, the "place of publication" in a case like this one is the plaintiff's domicile, which is New York.

The Opposition likewise suffers from a fundamental misunderstanding of the concept of "actual malice." Throughout the Opposition, McInnes conflates common law malice—*i.e.*, SPLC's alleged intent to do him harm—with constitutional "actual malice", which is the First Amendment-based standard applicable to defamation claims brought by public figures. *See, e.g.*, Opp. at 2 ("Plaintiff successfully pleads actual malice" based on SPLC's purported "determination to destroy" McInnes), 31 (SPLC "maliciously sought to deplatform" McInnes), 60 (SPLC "maliciously condemn[ed]" McInnes through the Hate Group Designation). This is not the law. *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 666 (1989) ("[I]t is also worth emphasizing that the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term."); *Henry v. Collins*, 380 U.S. 356, 357-58 (1965) (per curiam) (reversing defamation judgment where jury instruction could be read merely to require

3

intent to inflict harm rather than intent to do so through false statements).  Additionally, McInnes

contends that, because SPLC readily acknowledges that the Proud Boys do not view *themselves* as

a hate group, SPLC's contrary conclusion was therefore published with actual malice.  But the law

is also well-settled that a plaintiff's denials cannot provide the basis for a finding of actual malice.

*See, e.g.*, *Connaughton*, 491 U.S. at 691 n.37 (denials, "however vehement," cannot establish

actual malice because "such denials are so commonplace in the world of polemical charge and

countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of

error").  Rather, the opposite is true: SPLC's inclusion of the responses by the Proud Boys and

McInnes demonstrates its *lack* of actual malice.  *See, e.g.*, *Contemporary Mission, Inc. v. New York

Times Co.*, 842 F.2d 612, 622 (2d Cir. 1988) (finding no actual malice in part because "the article

does present [plaintiffs'] position").

Finally, the Opposition fails to engage meaningfully the dispositive distinction between

potentially actionable statements of allegedly false *fact* and non-actionable expressions of opinion.

Throughout the Opposition, McInnes argues that statements of subjective and evaluative opinion

are provably false statements of fact—simply because he says so.  *See, e.g.*, Opp. at 38 ("Either

[McInnes] is a bigot, or he is not."), 46 ("[W]hether a group attacks/maligns/vilifies 'others' . . . is

an objectively verifiable fact.").  In so doing, McInnes ignores the fundamental legal principle that,

where the facts underlying a subjective assessment are disclosed, the opinion itself is non-

actionable as a matter of law.  *See, e.g.*, *Davis v. Boeheim*, 22 N.E.3d 999, 1004 (N.Y. 2014).

As explained in more detail below, these fundamental legal errors are fatal to McInnes's

claims.

### III.       NEW YORK SUBSTANTIVE LAW APPLIES

To a significant extent, McInnes's entire Opposition hinges on an argument that the substantive law of Alabama, rather than New York, applies to McInnes's claims.  Indeed, he expressly concedes that New York law does not recognize either his false light or tortious interference claims at all, *see* Opp. at 24, and acknowledges that, under New York law, (1) the Hate Group Designation would be deemed a non-actionable expression of opinion, *id.* at 20-21, and (2) the subsidiary meaning doctrine would preclude his claims based on the Specific Statements, *id.* at 33.  As SPLC explains below, McInnes's argument for application of Alabama law is plainly incorrect.

The core of his contention is that, "under Alabama choice of law principles, defamation-type actions are decided under the law of the place of publication."  Opp. at 19.  From this unobjectionable premise, however, McInnes goes on to conclude that, "[i]n this case, that is the location of the defendant: Alabama."  *Id.*  The flaw in McInnes's reasoning is his assumption that the "place of publication" is the place where the publisher is located.  This is demonstrably incorrect, as the cases on which McInnes relies illustrate.

Specifically, McInnes sets out a lengthy quotation from *Wells v. Liddy*, 186 F.3d 505, 522 (4th Cir. 1999), which he asserts supports his contention that Alabama law governs this action.  But that very quotation begins by explaining that the place where a defamatory statement is "published" is *not* where the speaker is located, but rather where the defamatory statement is "seen or heard by non-parties."  *Id*.; *see also* Opp. at 20.  The other cases McInnes cites illustrate the same principle.  *See, e.g.*, *Triguero v. ABN AMRO Bank N.V.*, 614 S.E.2d 209, 212 (Ga. Ct. App. 2005) (holding that Netherlands law applied to phone call made from New York and received in the Netherlands).

The precedent that McInnes cites also explains what law should apply to multi-state defamation claims, like this one, where the choice of law analysis is governed by the *lex loci delicti* rule.[3]   Thus, for example, *Wells* relies on the *Restatement (First) of Conflicts* § 377 for its articulation of the governing standard in *lex loci* jurisdictions.   The *Restatement* contains the following helpful illustration:

> A, broadcasting in state X, slanders B.  B is well and favorably known in state Y and the broadcast is heard there by many people conversant with B's good repute. The place of wrong is Y.

*Id.* at n.5 illus.7.   As this illustration demonstrates, in cases involving multistate defamation, jurisdictions (such as Alabama) that follow the *lex loci delicti* rule consider the plaintiff's domicile to be the place where his injury was suffered.  *See, e.g.*, *Snyder v. Am. Kennel Club*, 661 F. Supp. 2d 1219, 1230 (D. Kan. 2009) (in *lex loci* jurisdiction, "[b]ecause the plaintiffs are Kansas residents, any financial or reputational injury they suffered from the alleged torts would have been felt here, thus these claims are governed by Kansas substantive law"), *aff'd*, 402 F. App'x 397 (10th Cir. 2010); *Katz v. Gladstone*, 673 F. Supp. 76, 80 & n.2 (D. Conn. 1987) (where "the law of the place where the injury occurred" controls the choice of law analysis, "since the injury to be redressed is an injury to plaintiff's reputation, the locus of the injury is plaintiff's domicile"); *Nobles v. Boyd*, No. 7:14-cv-214, 2015 WL 2165962, at *4-5 (E.D.N.C. May 7, 2015) (applying *lex loci delicti* principles to conclude that the law of plaintiff's domicile controlled defamation claim); *Broadspring, Inc. v. Congoo, LLC*, No. 13-cv-1866, 2014 WL 4100615, at *6 (S.D.N.Y. Aug. 20, 2014) ("In [online defamation cases governed by *lex loci delicti*], there is a presumptive rule that the law of the plaintiff's domicile applies."); *Cornett v. Gawker Media, LLC*, No. 2:13-cv-1579, 2014 WL 7330940, at *3 (D. Nev. Dec. 19, 2014) (where the law of the place of injury

---

[3] The rule is that, in *lex loci delicti* jurisdictions, "the law of the state where the injury occurred" governs tort claims.  *Fitts v. Minn. Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991).

controls, "the causes of action would have arisen where Plaintiff resided at the time of the alleged conduct because the essence of defamation is injury to the reputation of the plaintiff in his home where he is known" (internal marks omitted)).

Logic as well as law dictates this result—for torts such as defamation that concern alleged reputational injury, that injury is typically felt most acutely in the plaintiff's state of residence. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984) (noting that individuals endure the bulk of harm from torts like defamation in their home states). The same is true of torts alleging financial injury, as McInnes's tortious interference claim does. *See Chambers v. Cooney*, No. 07-cv-0373, 2007 WL 2493682, at *11 (S.D. Ala. Aug. 29, 2007) (noting in the context of a tortious interference claim that, "[w]here, as here, the injury in question is financial, the location where the financial injury was felt is determinative under *lex loci delicti*" and indicating that such injury is suffered in a plaintiff's domicile).[4]

The cases on which McInnes relies for the application of Alabama law not only have legal analyses that are unhelpful to him, but they are also factually distinguishable from this one. In *Wells*, for example, the Fourth Circuit applied Virginia law based on the fact that the speech at issue "was never broadcast by any means and was heard only by the audience at" a university in Virginia. 186 F.3d at 522. Those circumstances provide little guidance as to what law controls this case, where the statements McInnes complains about were simultaneously published across the entire country—and indeed the world—on the internet. *Green Group Holdings, LLC v.*

---

[4] The majority of jurisdictions have abandoned the *lex loci delicti* rule for multistate defamation in favor of a "most significant relationship" test articulated in the *Restatement (Second) of Conflicts*. That test, too, requires application of the law of the plaintiff's domicile absent compelling reasons to the contrary. *See* RESTATEMENT (SECOND) OF CONFLICTS § 150 ("When a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state.").

*Schaeffer*, No. 16-cv-145, 2016 WL 6023841 (S.D. Ala. Oct. 13, 2016), is similarly unhelpful to McInnes.  First, the opinion he cites is the report and recommendation of a magistrate judge that was never endorsed by the district court, and thus lacks precedential value.  Second, the magistrate judge applied Alabama law based primarily on the fact that "all parties have argued that Alabama law applies to the slander and libel claims at issue in their briefing."[5]  *Id.* at *6 n.4.  In other words, choice of law was not disputed.  The same is true of *Williams v. A.L. Williams & Associates*, *Inc.*, 555 So. 2d 121, 124 (Ala. 1989) (noting that "the parties and the trial court agreed that Georgia substantive law governs the libel claim").[6]  In short, these cases provide a legally and factually insufficient basis for McInnes to evade the law of New York here.

Finally, the Complaint itself demonstrates that New York law properly governs this case.  For one thing, it includes a claim based on a purported violation of a provision of *New York's* statutory labor law.  The essence of that claim is that McInnes has allegedly been injured in New York through the loss of his job *in New York*.  *See generally* Compl. ¶¶ 299-303; Opp. at 66-69.  For another, it contains extensive allegations purportedly documenting all of the reputational harms McInnes has suffered literally *in the New York neighborhood where he lives*.  Compl. ¶¶ 185-89.  McInnes's inclusion of the labor law claim, coupled with his allegations about the reputational harm he has suffered in his suburban New York neighborhood, reinforces the conclusion that New York law applies.  *Cf. Glass v. S. Wrecker Sales*, 990 F. Supp. 1344, 1347

---

[5] The magistrate also noted that the statements at issue were "published from Alabama" and that they "concern[ed] Plaintiffs' Alabama business operations."  *Green Grp. Holdings*, 2016 WL 6023841, at *6 n.4.  With respect to the former, the magistrate clearly misapprehended the significance of "publication" in the defamation context, as illustrated above.  With respect to the latter, nothing in the Complaint in this case (or the Opposition for that matter) suggests that McInnes had any specific business interests in Alabama or that the statements he has placed at issue have anything to do with Alabama.

[6] *Williams* is also inapposite because the communication at issue there was an intra-company letter disseminated to a handful of people in only two states, not a series of online articles disseminated instantly to the entire world.

(M.D. Ala. 1998) (under Alabama choice of law rules, "it is not the site of the alleged tortious act that is relevant, but the site of the injury").

## IV.      McINNES FAILS TO STATE A DEFAMATION CLAIM

McInnes devotes more than 30 pages to arguing that he has plausibly alleged a defamation claim.  *See* Opp. at 32-63.  Those arguments, however, both misconstrue applicable law and do little to rebut SPLC's showing that: (1) McInnes has failed to plausibly plead actual malice; (2) the Hate Group Designation constitutes a non-actionable expression of opinion; (3) the Hate Group Designation is not "of and concerning" McInnes as a matter of law; and (4) the subsidiary meaning doctrine therefore precludes his claims based on the Specific Statements.

### A.      McInnes Fails to State a Defamation Claim Based on the Hate Group Designation

#### 1.      The Complaint Failed to Plead Facts Plausibly Establishing Actual Malice

The Opposition appears to make two primary arguments regarding actual malice.  First, McInnes contends that, because the Proud Boys themselves insist that they are not a hate group—and because SPLC forthrightly acknowledges their position in many articles and on the Proud Boys Page—SPLC's decision to describe them as such was *ipso facto* made with actual malice. *See generally* Opp. at 56-59.  Second, McInnes presses the related argument that SPLC failed to adhere to its own definition of "hate group" when so describing the Proud Boys, and that this too constitutes actual malice.  *Id*. at 56-59, 60, 62.  McInnes also appears to assert, although somewhat half-heartedly, that SPLC published the Hate Group Designation with actual malice because it failed to investigate the Proud Boys sufficiently before doing so.  *Id*. at 59-60.  None of these arguments has any merit as a matter of either law or logic.

At the outset, it bears emphasis that McInnes makes virtually no attempt to tie either of his primary contentions back to what is actually alleged in his Complaint.  This failure is significant because it effectively concedes the thrust of SPLC's Motion: that the Complaint includes only boilerplate allegations of actual malice that are insufficient to satisfy the plausibility standard imposed by *Iqbal* and *Twombly*.  *See* Mot. at 36-38.  Indeed, in the seven-plus pages the Opposition devotes to the issue of whether McInnes has adequately pled actual malice, it cites the Complaint only twice: once to quote the Proud Boys' by-laws, Opp. at 59 (citing Compl. ¶ 33), and once to complain that SPLC never contacted McInnes before publishing the Articles.  *Id.* (citing Compl. ¶ 292).[7]  As explained below, neither of these allegations is relevant to the actual malice inquiry, nor are any of the new arguments McInnes makes in briefing sufficient to show that he has plausibly pled facts that would establish actual malice in any event.

McInnes's actual malice allegations boil down to this: the Proud Boys say they are not a hate group; SPLC acknowledges that the Proud Boys say they are not a hate group; therefore, SPLC acted with actual malice in describing the Proud Boys as a hate group.  This is sophistry.  Under McInnes's formulation, any published statement denied by a public figure is, by virtue of that denial, published with actual malice.  This is not the law, and the proposition has been squarely rejected by the Supreme Court and other state and federal courts throughout the country.  *See, e.g.*, *Connaughton*, 491 U.S. at 691 n.37 ("[T]he press need not accept 'denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.'") (quoting *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977)); *Little v. Consol. Publ'g*

---

[7] To be fair, McInnes also cites the Complaint a third time: to concede that he is a public figure such that the actual malice standard applies.  Opp. at 61 (citing Compl. ¶ 1).

*Co.*, 83 So. 3d 517, 524 (Ala. Civ. App. 2011) (same); *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17-cv-7568, 2018 WL 4735717, at \*9 (S.D.N.Y. Sept. 29, 2018) ("[A]llegations that a speaker knew of a plaintiff's denial of wrongdoing are insufficient to establish actual malice."); *Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 92 (D.D.C. 2012) ("[A]n author's knowledge of denials, however vehement does not show actual malice.") (internal marks omitted); *Torrance v. Morris Publ'g Grp., LLC*, 656 S.E.2d 152, 155 (Ga. Ct. App. 2007) (plaintiff "cannot show actual malice merely by making assertions contrary to those" in the publication).  Not only is this common sense, but to hold otherwise would effectively "punish [a defendant] for its effort" to provide all points of view in a publication.  *Edwards*, 556 F.2d at 120.

The Opposition's second argument—that the Hate Group Designation contradicts SPLC's own criteria for establishing who qualifies as a hate group and therefore was published with actual malice—is equally baseless.  Here, McInnes proceeds in three steps.  First, he quotes SPLC's definition of a "hate group" as one "that—based on its official statements or principles, the statements of its leaders, or activities—has beliefs or practices that attack or malign an entire class of people."  Opp. at 56.  Next, McInnes selects a variety of quotes from the SPLC Proud Boys Page that, in his view, establish that the Proud Boys "fail to meet the SPLC's definition of 'hate group.'"  Opp. at 57-59.  Finally, McInnes concludes that this establishes actual malice.  He is wrong.  For one thing, McInnes's characterization of the contents of the Proud Boys Page and the Articles is disingenuous at best.  As described at length in the Motion, those publications, not to mention the voluminous public record of McInnes's and the Proud Boys' activities and statements, supply the factual basis for the Hate Group Designation and demonstrate that it is entirely consistent with SPLC's criteria for identifying hate groups.  *See generally* Mot. at 5-32; *see also* Holliday Decl. Exs. 1-11, D.E. 17-2.

Moreover, even ignoring all of this context (as the Opposition does), McInnes's explanations of why the selected quotations demonstrate that SPLC failed to follow its own guidelines border on the absurd.  To take just two examples, the Opposition contains the following sentence:

> Thus, according to SPLC, the Proud Boys' membership policy does not "attack, malign or vilify" (or even discriminate against) "others" based on "race or sexual orientation" because the Proud Boys sponsor a women's "chapter," "the Proud Boys' Girls."

Opp. at 57.  As best as SPLC can tell, the import of this sentence is that SPLC's acknowledgement that the Proud Boys sponsor a women's chapter is tantamount to SPLC's admitting that the Proud Boys do not discriminate based on race or sexual orientation.  This assertion defies logic for any number of reasons—the most obvious being that women are neither a "race" nor a "sexual orientation."  But that is not all.  Just a page later, the Opposition states that the SPLC Proud Boys Page contains many statements attributable to the Proud Boys that, rather than "maligning" or "vilifying" an entire group, "are clearly intended to be empathetic and supportive."  Opp. at 58. As an example of such empathy, McInnes offers the following quote from a prominent Proud Boy:

> [Commenting on Sharia law]: "Put something on the table! Give us a reason to accept you, because you know what? Sharia law ain't it.  Raping women ain't it. Cutting off clits ain't it.  Throwing gay people off roofs ain't it.  You are a disgrace."

*Id*.  The characterization of this odious statement—which not only misrepresents Sharia law, but cynically implies that all Muslims support the practices described—as "empathetic and supportive" is emblematic of McInnes's rhetorical approach throughout the Opposition, making bald assertions irrespective of logic, common sense, or even basic decency.  This Court need not credit such hubris.[8]

---

[8] McInnes also takes issue with SPLC's statement that the Hate Group Designation was based in part on SPLC's conclusion that the Proud Boys often function as a "gateway" to "more overtly extreme ideologies."  Opp. at 60-61 (citing Mot. at 18).  He argues that this statement is evidence of actual malice

Finally, McInnes suggests that SPLC published with actual malice because it never contacted him before designating the Proud Boys as a hate group.  Opp. at 59-60 (citing Compl. ¶ 292).  This is his only "actual malice" related argument that is grounded in an allegation found in the Complaint.  It is, however, easily disposed of.  To begin with, this alleged failure to investigate is incredible on its face given the extensive factual record reflected in the Proud Boys Page and the Articles.  Moreover, it suffers from an even more fundamental flaw:  it is well settled that, because actual malice is a subjective standard focused on a defendant's awareness of falsity, an alleged failure to conduct an investigation cannot plausibly establish actual malice unless the alleged defamation is patently unbelievable on its face.  As the Supreme Court underscored in *Connaughton*, 491 U.S. at 666, the actual malice standard measures not whether a publisher "could have" investigated further, but rather whether the publisher had a subjective awareness of the statement's probable falsity at the time of publication.  Even in circumstances where a failure to investigate would constitute "an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers," it would not establish actual malice unless the publisher had "obvious reasons to doubt" the truth of the published information.  *Id.* at 666, 688.  Indeed, the defendant in the very U.S. Supreme Court decision establishing the actual malice test did no investigation whatsoever, and even had contrary information in its own files. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 287-88 (1964); *see also St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (no actual malice where defendant relied solely on allegations by union member without investigating—including without contacting the plaintiff—because actual malice

---

because whether the Proud Boys serve as a "gateway" is not part of SPLC's stated criteria for determining who qualifies as a hate group.  *Id.* at 61.  This argument fails for the same reasons as all of McInnes's other contentions: (1) it is not based on any allegation actually contained in the Complaint; (2) it mischaracterizes what the Motion actually says; and, (3) most significantly, it relies on turning a blind eye towards the voluminous evidence of the Proud Boys' actual statements and conduct laid out in detail in the Proud Boys Page and in the Articles.

"is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing").  For all the reasons explained above, the Complaint fails to plead any facts plausibly suggesting that SPLC had *any* reason to doubt its conclusion that the Proud Boys fit its criteria for designation as a hate group, and nothing about its alleged failure to contact McInnes affects that conclusion.

Not surprisingly, the Opposition itself all but concedes that McInnes has not, and cannot, adequately plead actual malice:

> The analysis above relies only on the information that SPLC chose to publish on its website.  It is *unknown* what additional information SPLC may have that similarly controverts [the] Hate Group Designation as applied to Plaintiff and the Proud Boys.  At a minimum, the information SPLC indisputably [knew] (and published [on] the Proud Boys page) *should have raised doubts* as to the truth of that designation.

Opp. at 62-63 (emphasis added).  By acknowledging that he does not know—and the Complaint therefore does not allege—"what additional information SPLC might have had" in making the Hate Group Designation, McInnes is conceding that he does not have a sufficient factual basis to allege actual malice.  *Cf. Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (noting, in the context of evaluating actual malice allegations under *Iqbal* and *Twombly,* that "[p]lausible, of course, means something more than merely possible").  Moreover, the actual malice standard requires a plaintiff plausibly to allege that a statement was published with a "high degree of awareness" of its "probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).  McInnes's admonition that the Proud Boys' own statements "should have raised doubts" about the Hate Group Designation, even if credited, would at most demonstrate negligence and falls well short of the intentionally high bar necessary to sustain a finding of actual malice.

### 2.   The Hate Group Designation Constitutes a Non-Actionable Expression of Opinion

In its Motion, SPLC demonstrated why the Hate Group Designation constitutes a non-actionable expression of opinion: because such a description is not susceptible of being proven true or false, it is protected from defamation liability under controlling Supreme Court and New York State precedents.[9]   Indeed, many courts around the country—including in Alabama—have acknowledged that generalized characterizations such as "hate group" are not actionable in defamation for precisely this reason.   *See, e.g.*, *Jackson v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, No. 2:07-CV-461, 2009 WL 10704261, at *39 (N.D. Ala. Feb. 23, 2009).   And even if describing the Proud Boys as a "hate group" *were* somehow provably false, it still would not be actionable because the underlying facts on which that description is based are fully disclosed in the Articles and on the Proud Boys Page.

Against this backdrop, McInnes offers a pastiche of arguments that are, by turns, implausible *ipse dixit* assertions, misstatements of applicable law, and internally self-contradictory proclamations.   The thrust of McInnes's argument is that, because SPLC provides an explanation of what criteria it looks at to determine whether to describe an entity as a hate group, the description itself is a "compilation of empirical facts" and therefore constitutes a "provably false" factual statement.   *See generally* Opp. at 44-48, 51-53.   This argument is wrong for at least three reasons.

First, McInnes incorrectly asserts that SPLC's own criteria provide the "yardstick" by which the question of whether the Hate Group Designation is fact or opinion should be measured. As the Supreme Court has made clear, however, the relevant "yardstick" is not how SPLC arrived

---

[9] Alabama law, too, recognizes the constitutional requirement that a statement must be "provably false" to be actionable, as well as that "imaginative expression" and "rhetorical hyperbole" are fully protected by the First Amendment.   *Deutcsh v. Birmingham Post Co.*, 603 So. 2d 910, 912 (Ala. 1992) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990)).

at its conclusion, but rather whether the challenged statement can be proven true or false. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990).  McInnes himself concedes that, even under his preferred Alabama law, this Court must give the term "hate group" the "meaning that would be ascribed to the language by a reader or listener of average or ordinary intelligence, or by a common mind."  Opp. at 53 (citing *Ponder v. Lake Forest Prop. Owners Ass'n*, 214 So. 339, 351 (Ala. Ct. App. 2015)).  And while McInnes is wrong to contend that Alabama law applies, he *concedes*, as he must, that the Hate Group Designation is not actionable under New York law, which applies substantially the same standard.  Opp. at 54 (responding to the New York case law cited in the Motion only by stating that "[t]his is not New York."); *see also Davis*, 22 N.E.3d at 1004-05 ("Distinguishing between fact and opinion is a question of law for the courts, to be decided based on what the average person hearing or reading the communication would take it to mean.") (internal marks omitted).  On this point, therefore, it ultimately does not matter which law applies.  Courts all over the country, including those applying New York as well as Alabama law, have definitively concluded that characterizations such as "hate group" constitute non-actionable expressions of opinion.  *See* Mot. at 42-43 & n. 95 (citing authority).[10]

Second, even if SPLC's criteria for identifying hate groups did impact the fact/opinion analysis, McInnes's assertion that those criteria present a set of "empirical facts" susceptible of being proven true or false is based on nothing more than a catalogue of facially implausible *ipse dixit* statements.  For example, the Opposition simply declares that "attacks, maligns, or vilifies"

---

[10] McInnes attempts to avoid the collective conclusions of dozens of state and federal courts by relying on a single overruled and factually inapposite Alabama Supreme Court case from 1977.  *See* Opp. at 53-54 (discussing *Dunning v. Boyes*, 351 So. 2d 883 (Ala. 1977)).   As explained above, New York substantive law, not the law of Alabama, controls McInnes's claims.  Moreover, as McInnes himself admits, *Boyes* was overruled less than a decade later and is no longer good law (Opp. at 54 n. 16)—not to mention that it was decided over a decade before the Supreme Court in *Milkovich* definitively held that no action for defamation could lie where a statement was not "provably false."  497 U.S. at 19.

are "specific, concrete terms."  Opp. at 45.  Similarly, it proclaims that whether a group has "beliefs or practices" that "attack . . . or malign . . . or vilify . . . others" is a "clearly defined, objective standard" and that "attacks, maligns and vilify are specific actions."  *Id*. at 46.  Such declarations and proclamations notwithstanding, whether something McInnes or another Proud Boy said "attacks, maligns, or vilifies" a group of people is quintessentially a matter of opinion.  In the same vein, McInnes asserts that "[a] group's 'official statement or principles,' the 'statements' of its leaders and its 'activities' are nouns—they exist, or they do not."  *Id.*  True enough.  But this observation begs the dispositive question.  The fact that a group makes statements and conducts activities says nothing about what those statements and activities *mean* to those who read and observe them.  Such an evaluation of the meaning that should be derived from a group's actions and statements—including whether or not the reader/observer believes they "attack, malign, or vilify" others—is the stuff of opinion.

The Opposition makes this very point more convincingly than any legal authority.  In discussing actual malice, McInnes provides the following quote from one of his articles:

> The white liberal ethos tells us blacks aren't at MIT because of racism.  They say blacks dominate the prison population for the same reason.  They insist America is a racist hellhole where 'people of color' have no future.  This does way more damage to black youth than the KKK.  When you strip people of culpability and tell them the odds are stacked against them, they don't feel like trying.

Opp. at 58.  McInnes characterizes this quote as an expression of "empathy" and "support" for the black community.  *Id*.  But it could just as readily—SPLC would suggest far more easily—be interpreted as a glib apologia for American racism, an attack on white liberals, or a vilification of "damaged" black youth who "don't feel like trying."  The point is that the import of this statement—that is, whether it is "empathetic," as McInnes insists, or hateful, as SPLC reads it—is self-evidently a matter of opinion.  For the same reason, the Hate Group Designation itself—which

17

is nothing more than the expression of SPLC's considered evaluation of the aggregated words and actions of the Proud Boys—is opinion as well.[11]

Third, even if McInnes's argument did not suffer from the defects outlined above, it would nevertheless be non-actionable under New York law as a statement of opinion based on disclosed facts. As the New York Court of Appeals recently explained:

> [Non-actionable opinion] **may be a statement of opinion which is accompanied by a recitation of the facts upon which it is based**, or it may be an opinion not accompanied by such a factual recitation so long as it does not imply that it is based upon undisclosed facts.

*Davis*, 22 N.E.3d at 1004 (emphasis added) (internal marks omitted). New York law absolutely protects opinions based on disclosed facts for good reason: when the underlying facts are disclosed, "the reader has the opportunity to assess the basis upon which the opinion was reached in order to draw [the reader's] own conclusions concerning its validity." *Id*.[12] That is exactly the case here. Any reader of the Articles and the Proud Boys Page will understand completely the basis on which SPLC concluded that the Proud Boys are a hate group and be able to draw his or her own conclusions as to whether he or she agrees with SPLC's evaluation. *See generally* Mot. at 21-32; Holliday Decl. Exs. 1-11.

McInnes offers no response to this well-established doctrine. Quite the opposite—he attempts litigation judo by asserting that the Hate Group Designation is actionable *because* there

---

[11] In the same vein, McInnes makes the curious argument that there is a distinction between SPLC's "decision" to apply the hate group label to a given group, which he admits is "subjective," and SPLC's "definition" of a hate group, which is allegedly not. Opp. at 46. This assertion reveals the shell game that McInnes is playing. The "decision" to describe the Proud Boys as a hate group *is* the allegedly defamatory statement that McInnes is challenging. His admission that such a decision is inherently subjective should be the end of the inquiry.

[12] Alabama law on this point is the same as New York. *See Sanders v. Smitherman*, 776 So. 2d 68, 74-75 (Ala. 2000) ("One cannot recover in a defamation action because of another's expression of an opinion based upon disclosed, nondefamatory facts, no matter how derogatory the expression may be . . . This is so because the recipient of the information is free to accept or reject the opinion, based on his or her independent evaluation of the disclosed, nondefamatory facts.")

are facts underlying it.  *See, e.g.*, Opp. at 44 (Hate Group Designation "consists of a compilation of clear, empirical facts"); *id.* at 46 ("SPLC claims it makes this factual determination 'based on' verifiable facts"); *id.* at 47 ("SPLC's definition of 'hate group' is a yardstick that SPLC constructed, made up of empirical facts instead of feet and inches.").  In arguing that the Hate Group Designation is grounded in facts disclosed in the Articles and on the Proud Boys Page, McInnes admits that the Hate Group Designation is, at a minimum, non-actionable opinion based on disclosed facts.

Although not a model of clarity, McInnes's Opposition appears to offer two additional, related arguments for why the Hate Group Designation does not qualify as an expression of opinion.  Both are without merit.  <u>First</u>, he argues that the Hate Group Designation is not opinion because SPLC intends that designation to be used by others.  Opp. at 48-50.  In so doing, McInnes cites no case law or other authority that would establish that this allegation has any legal relevance.  That is because there is none.  Opinions of all stripes, from expert opinions in judicial proceedings to lay opinions expressed during debates in the public square, are expressed in the hope that they will be accepted and relied on.  And, like McInnes's other arguments, this one is premised on the mistaken idea that SPLC has the ability to transform opinion into fact through the power of its intentions.  <u>Second</u>, he argues that the Hate Group Designation is not protected under *Milkovich* because it was made with "knowledge of its false implications."  Opp. at 50-51.  This appears to be a misreading of *Milkovich's* recognition that, even if a statement is provably false, it still must satisfy the actual malice standard to be actionable where, as here, the plaintiff is a public figure. 497 U.S. at 20-21.  This has nothing whatever to do with the opinion analysis.  Even if it did, for all the reasons described in Section IV.A.1, *supra*, McInnes has failed to plead a plausible claim of actual malice.

19

### 3.  The Hate Group Designation Is Not Of and Concerning McInnes

To state a claim for defamation, a plaintiff must adequately plead that the allegedly defamatory statement at issue was "of and concerning" him or her.  *See, e.g.*, *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017); *Ex parte Bole*, 103 So. 3d 40, 51 (Ala. 2012) (defamatory statement must be "concerning the plaintiff").  As explained in SPLC's Motion, McInnes cannot satisfy that requirement here for the simple reason that the Hate Group Designation is on its face *about* the Proud Boys—not McInnes himself.  Mot. at 38-41.

McInnes offers two arguments in opposition.  First, he asserts that, because McInnes's name is mentioned many times on the Proud Boys Page and in the Articles, and because the Proud Boys Page includes information about him, the Hate Group Designation is "personal" to him.  Opp. at 38-40, 43.  Second, McInnes argues that, largely for the same reason, any reasonable person would understand that the Hate Group Designation was "of and concerning" him.  *Id*. at 43.

McInnes's only authority for the proposition that the use of his name on the Proud Boys Page renders the Hate Group Designation "of and concerning" him is *Lovingood v. Discovery Communications, Inc.*, No. 5:14-cv-00684, 2015 WL 5719169 (N.D. Ala. 2015).  That case concerned a defamation claim brought against the producers of a 2013 film about the space shuttle *Challenger* disaster.  The plaintiff, who had worked on the Challenger mission, was a character in the film and alleged that he was falsely depicted lying to a Presidential Commission convened to investigate the tragedy.  *Id.* at *3.  The defendants argued that this allegation was not "of and concerning" Lovingood because "the statements in the film concern only NASA as an organization."  *Id.*  The Court rejected this argument, finding instead that "the film suggested that Mr. Lovingood lied" and that therefore the statements "concern Mr. Lovingood as an individual."  *Id*.

The circumstances in *Lovingood*—in which the plaintiff challenged a single statement in which he was personally depicted lying to a Presidential Commission—are a far cry from those at issue here.  The defendant's argument in that case was that, because the substance of Lovingood's testimony was about NASA, the challenged statement was not "of and concerning" him.  The court rightly rejected that assertion, finding that the "statement" challenged in the lawsuit was not the substance of the testimony (which was about NASA), but rather the portrayal of Lovingood as having lied (which was about Lovingood).  *Id*.  In this case, the reverse is true.  The statement that McInnes has chosen to challenge is not a description or depiction of any particular thing he has done.  To the contrary, the Complaint does not challenge the accuracy of *a single one* of the dozens of descriptions of and quotes from McInnes that appear on the Proud Boys Page.  Rather, it takes issue only with the Hate Group Designation itself, a statement that, by definition, refers to a group, not an individual.  *Lovingood* thus provides no support for McInnes's position.

In fact, McInnes's reliance on *Lovingood* is emblematic of the larger problem with his rendition of the "of and concerning" requirement: it relies on collapsing the distinction between the Hate Group Designation and all of the other allegedly defamatory statements mentioned in the Complaint.  *See* Opp. at 40 ("SPLC's **defamatory statements (including the Hate Boy [sic] Designation)** are not merely 'of and concerning' Plaintiff, they are personal to Plaintiff.") (bolding added); *id.* at 43 ("Nor do **the statements on that [sic] SPLC's Proud Boys Page and SPLC's Hate Group Designation** 'concern only [the Proud Boys] as an organization'.") (bolding added).  As explained in the Motion, SPLC does not deny that some of the specific statements challenged in the Complaint are of and concerning McInnes.  Unquestionably, some of them are.  But the Hate Group Designation—which refers only and specifically to a *group*, is by definition not "about" McInnes himself.  *See, e.g.*, *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1089 (D.C. Cir. 2007)

21

("Allegations of defamation by an organization and its members are not interchangeable. Statements which refer to individual members of an organization do not implicate the organization. By the same reasoning, statements which refer to an organization do not implicate its members.").[13]

### 4. McInnes Acknowledges That, Under New York Law, the Subsidiary Meaning Doctrine Bars His Specific Claims

The Motion explains why, if McInnes has failed to state a defamation claim with respect to the Hate Group Designation, New York's subsidiary meaning doctrine bars a defamation action based on the Specific Claims as well.  Mot. at 46-48.  In his Opposition, although McInnes contends that New York law does not apply, he expressly acknowledges New York's subsidiary meaning doctrine and makes no effort to argue that his Specific Claims could survive its application in this case.  Opp. at 33.  Consequently, McInnes has conceded that, if the case is governed by New York law, the subsidiary meaning doctrine bars the Specific Claims.

### B. McInnes Fails to State a Defamation Claim Based on Any of the Specific Claims

As noted, in addition to the Hate Group Designation, the Complaint points to dozens of additional allegedly defamatory statements published by SPLC.  In its Motion, SPLC referred to these allegations collectively as the Specific Claims.[14]  For the Court's ease of reference, SPLC prepared an Addendum to its Motion, which consisted of a chart listing each of the Specific Claims and briefly describing the grounds on which each is subject to dismissal.  *See* Addendum, D.E. 17-

---

[13] For this reason too, McInnes's invocation of the *Restatement (Second) of Torts* § 564 is misplaced. *See* Opp. at 43.  The *Restatement* simply sets out the rule that defamation liability can attach where the recipient of a communication "reasonably . . . understands that it [is] intended to refer" to the plaintiff. But here, at least with respect to the Hate Group Designation, no reasonable person would consider that statement to refer to McInnes as an individual, for the reasons described above and in the Motion.

[14] In his Opposition, McInnes appears to refer to them, or a subset of them, as the "Non-HGD Statements."  Opp. at 34, 38.

1.  In the entire 69 pages of his Opposition, McInnes does not mention the Addendum once, much less engage with its substance.  His silence on this point speaks volumes about his confidence that any of those claims are viable.

McInnes does purport to identify a subset of 22 of the Specific Claims that he views as "set[ting] out provably false statements of what purport to be plain facts published with actual malice by SPLC."  Opp. at 35-38.  As it did in its Motion, for the Court's ease of reference, SPLC provides with this Reply a supplemental addendum (the "Reply Addendum") addressing each of these Specific Claims and demonstrating why, for one or more of the reasons described below, it fails to state a plausible defamation claim.

### 1.    McInnes Has Failed to Plead Actual Malice with Respect to Any of the Specific Claims

Because he is a conceded public figure, McInnes is required plausibly to allege actual malice with respect to each and every one of his Specific Claims.  Nevertheless, the Opposition makes no attempt to explain on what basis McInnes contends that *any* of the statements underlying the Specific Claims was made with actual malice.  There is a good reason for this: McInnes is constrained by the Complaint, and there are *no* allegations in that pleading regarding actual malice with respect to *any* of the Specific Claims either.  For this reason alone, they must be dismissed.

### 2.    The Specific Claims Fail for Other Reasons As Well

The Motion identified five separate grounds on which the Specific Claims should be dismissed: (1) many of them constitute non-actionable expressions of opinion; (2) several of them are not "of and concerning" McInnes; (3) others are substantially true; (4) still others lack any defamatory meaning; and (5) they all should be dismissed pursuant to New York's incremental harm doctrine.  Mot. at 48-54.  The Motion also explains the legal standards supporting each of those grounds and provides examples of how they apply to one or another of the Specific Claims.

There is no need to re-hash those arguments here—the Reply Addendum addresses the Specific Claims identified in the Opposition, including the deficiencies applicable to each of them.

It is, however, worth noting that the Opposition substantially—and inaccurately—reframes what is actually alleged in the Complaint with respect to many of the Specific Claims. For example, the Opposition includes four bullet points purporting to identify "provably false statements of what purport to be plain facts published with actual malice" set forth in paragraph 197 of the Complaint. Opp. at 36-37. These "facts" are simply screen shots from SPLC's website that depict McInnes. More importantly, all that is alleged about them in the Complaint is the general statement that they are presented "typically with inflammatory, misleading or defamatory text superimposed on [them]." Compl. ¶ 197. Nowhere does the Complaint allege any specific defamatory statement contained in any of these images. In the Opposition, however, McInnes asserts that, via these images, he has adequately pled defamation based on "[t]he false suggestion that Mr. McInnes was involved in a New York City attack against gays"; "[t]he false claim that Mr. McInnes commits, tolerates or promotes violence"; and "[t]he false claim that Mr. McInnes . . . committed copyright infringement." Opp. at 36-37. These allegations appear nowhere in the Complaint, and McInnes's attempts to argue what he has not pled should be rejected. The Reply Addendum provides further examples of the same misdirection.[15]

## V.   McINNES'S "TAG ALONG" CLAIMS ALSO FAIL

McInnes concedes that, if New York law applies, his tortious interference and false light claims must be dismissed. Opp. at 24 ("New York law does not recognize two of Mr. McInnes's

---

[15] In any event, even if the Complaint did contain the allegations the Opposition describes, it cannot reasonably be disputed that McInnes was involved in a New York City attack in which homophobic slurs were used, *see* Mot. at 15; that he was at one point banned from YouTube for copyright infringement, *see* Mot. at 11; and that both he and the Proud Boys have committed, tolerated, and promoted violence, *see* Mot. at 9-10, 12-13.

causes of action, those for tortious interference and false light invasion of privacy."). And, in any event, McInnes has failed to state a claim for these two torts, as well as his statutory New York Labor Law claim—regardless of what law applies.

### A. McInnes's "Tag Along" Claims Are Barred by *Hustler Magazine v. Falwell*

Because his defamation claim is fatally flawed, McInnes attempts to recast his primary cause of action as one for tortious interference in a misguided effort to avoid the constitutional burdens he must otherwise overcome. Opp. at 25-26. As explained in the Motion, however, more than thirty years ago the Supreme Court foreclosed defamation plaintiffs from engaging in such efforts to circumvent the First Amendment through creative pleading. Mot. at 54-56 (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51-57 (1988)). McInnes's attempt to plead around his inadequate defamation claim therefore runs directly afoul of *Falwell*, and the arguments in his Opposition to the contrary misapprehend the import of that Supreme Court decision.

McInnes urges that "tortious interference claims need not be duplicative of defamation claims" and points to cases—both in Alabama and in New York—where courts have analyzed separately claims for defamation and tortious interference. Opp. at 25-26. In so doing, McInnes's argument fundamentally misunderstands the point of SPLC's arguments based on *Falwell* and its progeny. The point is not that *Falwell* renders other torts "duplicative" of defamation. It is that non-defamation tort claims alleging injury to reputation are subject to the same constitutional limitations as would be placed on a defamation claim—*i.e.*, as relevant to this case, the statements on which they are based must be "of and concerning" the plaintiff, provably false, and, most importantly, because the plaintiff is concededly a public figure, they must be published with actual malice. *See. e.g.*, *Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 499 F.3d 520, 530 (6th Cir. 2007) ("Following the Supreme Court's lead in *Falwell*, the circuit courts have likewise imposed the actual-malice standard on other tort claims predicated on defamatory speech"); *see also* Mot.

at 55-56 (citing cases).  Here, there is no serious doubt that the injury McInnes complains of in his tortious interference and false light claims is to his reputation or that such injury is allegedly the result of SPLC's publication of the Hate Group Designation.  *See, e.g.*, Compl. ¶¶ 7, 14, 92, 184, 194, 200; *see also* Opp. at 24 (acknowledging that his tortious interference claim fails under New York law because New York law would not recognize a tortious interference claim based on reputational harm).  Nor is there any serious question that the same statements that are placed at issue by his defamation claim animate his tortious interference and false light claims as well.  Opp. at 27, 30, 65-66.  Accordingly, McInnes's "tag along" claims are subject to the same constitutional scrutiny as his defamation claim, and fail for the same reasons.  *See supra* Section IV.

*None* of the cases McInnes cites purports to address the constitutional principle established by *Falwell*.  To the extent they bear on that question at all, they support, rather than undercut, SPLC's position.  For example, in *Weakley v. Roberts*, No. 3:16-cv-00403, 2017 WL 7201526 (N.D. Ala. Mar. 7, 2017), the court construed a *pro se* complaint to adequately allege *both* defamation and tortious interference.  Similarly, in *Stapleton Studios, LLC v. City of New York*, 810 N.Y.S.2d 657, 657 (App. Div. 2006), the court found that the plaintiff had made out a claim for tortious interference only because the complaint's "business defamation allegations . . . [were] reasonably susceptible of defamatory connotation" and therefore "themselves state a cognizable claim for relief."  Both of these cases are entirely consistent with the principle articulated in *Falwell*—that non-defamation torts seeking recovery for reputational damage must still satisfy the pleading standard for defamation, which includes the First Amendment-based safeguards imposed by the Supreme Court.  *See, e.g.*, *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 522 (4th Cir. 1999) (plaintiff could not "recover defamation-type damages under non-reputational tort

claims, without satisfying the stricter (First Amendment) standards of a defamation claim" because "such an end-run around First Amendment strictures is foreclosed by *Hustler*").[16]

### B.    McInnes Fails to State a Claim for Tortious Interference

Separate and apart from these constitutional infirmities, McInnes fails to state a claim for tortious interference on substantive grounds as well, regardless of whether New York or Alabama law applies.

Both New York and Alabama law require, among other things, that a plaintiff plead damages proximately caused by the alleged "intentional interference" with an actual or potential business relationship. *Thome v. Alexander & Louisa Calder Found.*, 890 N.Y.S.2d 16, 29-30 (App. Div. 2009); *Waddell & Reed, Inc. v. United Inv'rs Life Ins. Co.*, 875 So. 2d 1143, 1153 (Ala. 2003) (elements of tortious interference under Alabama law include "damage to the plaintiff *as a result of* the interference") (emphasis added).  In the Motion, SPLC established that McInnes had failed to allege any specific statement tied to any specific damages.  Mot. at 57.  In his Opposition, McInnes makes clear that his theory of damages is premised on SPLC's alleged role in "de-platforming" him—or, as he rather melodramatically describes it, SPLC's "malicious, vindictive . . . intention to destroy a man's ability to support his family—by depriving him of every molecule of oxygen in the economic and sales channels in which he operates . . . ."  Opp. at 29.  He argues

---

[16] McInnes also relies on *Trojan Electric & Machine Co. v. Heusinger*, 557 N.Y.S.2d 756, 758 (App. Div. 1990), for the proposition that "courts will not hesitate to impose liability for and to limit . . . speech in order to 'redress a private wrong' . . . where, as here, '[t]he actions of defendant[] were calculated to injure plaintiff[']s business.'"  Opp. at 25.  *Heusinger*, however, concerned the entirely different question of when, in light of the First Amendment's restrictions governing prior restraints on speech, a preliminary injunction could issue to restrain an individual's picketing of a housing development where his picket signs contained allegedly defamatory material and infringed the residents' privacy and quiet enjoyment rights.  No prior restraint is at issue in this case.  And to the extent *Heusinger* implicates the issues here at all, it is entirely consistent with *Falwell*, both in the specific sense that the court acknowledged that the complaint adequately stated a claim for defamation, and in the general sense that the court subjected the complaint to rigorous First Amendment scrutiny on the issue of prior restraint.

that SPLC caused this de-platforming in two ways: (1) by promulgating a set of model policies as a resource for online platforms seeking to combat hate speech (*i.e.*, the "Change the Terms" website, Compl. ¶¶ 118-149), Opp. at 27-29; and (2) by publishing a series of articles regarding his and the Proud Boys activities.  Opp. at 30 (citing Compl. ¶¶ 153-167).  When the actual allegations in the Complaint are examined, however, it is evident that neither of these theories states a plausible theory of causation.

With respect to Change the Terms, McInnes alleges that the website first went live in October 2018.  Compl. ¶ 118.  A few pages later, he asserts that he was removed from Twitter in August 2018, months *before* the website even existed.  *Id.* ¶ 157.  "[C]ourts need not accept as true 'internally inconsistent factual claims.'"  *Shack v. Jenkins*, No. 2:16-cv-1626, 2017 WL 1017133, at *2 (N.D. Ala. Feb. 23, 2017) (citation omitted).  Moreover, McInnes alleges that, as of the filing of the Complaint, "the Change the Terms website lists approximately 40 organizations" as having signed on "in support of the recommended policies."  Compl. ¶ 149.  Yet he very conspicuously does *not* allege that any of the platforms that he identifies as having given him the boot are among those forty.  *See* Compl. ¶¶ 153-179 (naming Twitter, Facebook, Instagram, PayPal, YouTube, MailChimp, and iTunes).[17]   In short, McInnes's assertion that the Change the Terms website proximately caused his de-platforming is nothing more than speculation, which is insufficient to satisfy the plausibility requirement as a matter of law.  *See, e.g.*, *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level").

McInnes's other theory—that SPLC's Articles were the cause of his de-platforming—is even less plausible.  As set forth in detail in the Motion, McInnes and the Proud Boys were the subject of an avalanche of media attention both prior to and during the same period in which the

---

[17] In fact, none of these organizations are among the 40+ listed on the Change the Terms site. *See* Holliday Reply Decl. Ex. 3.

Articles were published.  *See generally* Mot. at 5-19.  It is simply not plausible for McInnes to allege that the specific articles published by SPLC were the cause of his de-platforming, as opposed to the weight of national coverage of his and the Proud Boys' public words and deeds.  *See Evans v. St. Lucie Cty. Jail*, 448 F. App'x 971, 975 n.3 (11th Cir. 2011) (under *Iqbal*, a court "must take[] into account 'obvious alternative explanation[s]' in determining whether a claim has been stated").[18]

McInnes has failed to state a tortious interference claim for other substantive reasons as well.  As explained in the Motion, he cannot satisfy New York law's requirement that SPLC's alleged actions were undertaken for the "*sole* purpose of harming" him or were "criminal or independently tortious."  *Thome*, 890 N.Y.S.2d at 29-30 (emphasis added).  With respect to whether SPLC's actions were "independently tortious," McInnes relies only on his defamation claim.  Opp. at 31.  But because McInnes's defamation claim is untenable for all of the reasons explained above, he cannot rely on it as the predicate for a tortious interference claim.  And with respect to the tort's "sole purpose" requirement, McInnes can only muster the retort that honoring this well-established aspect of New York law "would make a virtue out of widespread tortious conduct as opposed to merely interfering with the economic advantage of one target at a time."

---

[18] SPLC is not, as McInnes suggests, arguing that "maybe something else caused Mr. McInnes to suddenly be banned from social media."  Opp. at 29.  Rather, SPLC is arguing that, for the reasons described above, McInnes has failed to plausibly allege that SPLC was the cause of his de-platforming. In that regard, McInnes's reliance on *Bain v. Jockey Club Technology Services, Inc.*, No. 07-cv-80371, 2007 WL 9706995, at *2 (S.D. Fla. Nov. 29, 2007), is perplexing.  Opp. at 29-30.  In that case, the court found that the plaintiff had stated a plausible claim for tortious interference based on an allegation that the defendant had "transmitted and caused a virus to shut down" two computer servers.  *Id*.  It is, at best, unclear what relevance *Bain* has to this case.

Opp. at 31-32.  Setting aside that this formulation plainly misconstrues SPLC's argument, it has no basis in the law in any event.

### C.    McInnes Fails to State a Claim for False Light Invasion of Privacy

SPLC's Motion explains that New York does not recognize the false light tort.  Mot. at 58. McInnes now concedes that, if New York law applies, he has no such claim.  Opp. at 24, 63.

Even if Alabama law did apply, however, McInnes has nevertheless failed to state a false light claim.  That is because, under Alabama law, the false light tort requires the same showing of actual malice as a claim for defamation.  *See* Opp. at 65 (citing *Smith v. Huntsville Times Co.*, 888 So. 2d 492, 496 (Ala. 2004)).  For all the reasons explained above, McInnes has failed plausibly to allege actual malice; his false light claim therefore falls along with his defamation claim.[19]

### D.    McInnes Fails to State a Claim for Violation of New York Labor Law

In the Motion, SPLC identified three reasons why McInnes had failed to state a claim under New York Labor Law § 201-d: first, because SPLC was not McInnes's employer; second, because the statute does not authorize liability for aiding and abetting; and third, because McInnes failed to allege any plausible, causal relationship between SPLC's actions and his termination.  Mot. at 58-60.  In his Opposition, McInnes challenges only the latter two arguments—that the statute allows for aiding and abetting liability and that he has alleged a plausible link between SPLC's actions and his employment termination.  He is wrong on both counts.

---

[19] In addition, McInnes's false light claim is not cognizable under Alabama law because Alabama recognizes a "public interest" exception to the false light tort.  *See, e.g.*, 2 Ala. Pers. Inj. & Torts § 12:28 (2014 ed.) ("An action for invasion of privacy based on false light" cannot "relate to any matter which is inherently public or of legitimate interest to the public."); *accord Minnifield v. Ashcraft*, 903 So. 2d 818, 822-23 (Ala. Civ. App. 2004) ("There is a 'legitimate public interest' exception to the right to privacy."). The activities of McInnes and the Proud Boys described in the Articles are self-evidently of interest to the public.

McInnes argues that, "[i]n New York, civil liability may attach to one who aids and abets the commission of a wrongful act against another."  Opp. at 67.  He further contends that this principle applies in the context of "an unlawful discriminatory employment practice like that which Plaintiff has alleged here."  *Id*.  To support this point, McInnes cites to cases construing Section 296(6) of New York's Human Rights Law.  That statute, however, *expressly imposes* liability on persons who aid or abet employment discrimination under the Human Rights Law.  *See* N.Y. Exec. Law § 296(6) ("It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.").  McInnes does not argue that the Labor Law section at issue here contains any similar provision, because it does not.  If anything, therefore, the cases McInnes relies on undermine, rather than support his claim, because they demonstrate that, when the New York legislature "wished to create such [aiding and abetting] liability, it had little trouble doing so."  *Pinter v. Dahl*, 486 U.S. 622, 650 (1988); *cf. Commw. of the N. Mar. I. v. Canadian Imperial Bank of Commerce*, 21 N.Y.3d 55, 62 (2013) ("We cannot read into the statute that which was specifically omitted by the legislature.").  In short, McInnes is correct that there are circumstances in which New York law allows imposition of aiding and abetting liability.  This is not one of them.

Finally, McInnes offers precious little argument to rebut SPLC's contention that he fails to allege any plausible causal link between SPLC's action and his firing by BlazeTV.  Mot. at 59-60.  The best he can muster is to mischaracterize SPLC's argument as asserting that he has failed to account for other, equally plausible explanations for his firing.  Opp. at 68.  But he points to no allegation in the Complaint that demonstrates a plausible link between SPLC's actions and his firing.  The lack of any such allegation is fatal to McInnes's New York Labor Law claim.

## CONCLUSION

At bottom, this is a case about the SPLC's right to criticize and offer opinions about McInnes and the Proud Boys.  It undoubtedly has a First Amendment right to do so.  *See, e.g.*, *Falwell*, 485 U.S. at 51 ("[O]ne of the prerogatives of American citizenship is the right to criticize public men and measures.  Such criticism, inevitably, will not always be reasoned or moderate; public figures as well as public officials will be subject to vehement, caustic, and sometimes unpleasantly sharp attacks.") (internal marks and citation omitted).  For all of the foregoing reasons, SPLC respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice, and grant such other relief as it deems just and proper.

*/s/ Shannon Holliday*
Shannon Holliday [ASB-5440-Y77S]
Robert D. Segall [ASB-7354-E68R]
Benjamin W. Maxymuk [ASB-9590-M67M]
COPELAND, FRANCO, SCREWS & GILL, P.A.
P.O. Box 347
Montgomery, AL 36101-0347
Telephone:  334-834-1180
Facsimile:  334-834-3172
Email:  holliday@copelandfranco.com
Email:  segall@copelandfranco.com
Email:  maxymuk@copelandfranco.com

**Attorneys for Defendant**
**The Southern Poverty Law Center, Inc.**