**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
NORTHERN DIVISION

| | |
|---|---|
| GAVIN MCINNES,<br><br>  *Plaintiff,*<br><br>  *- vs.-*<br><br>SOUTHERN POVERTY LAW CENTER, INC.,<br><br>  *Defendant*. | CIVIL ACTION NO.<br>2:19-cv-98-MHT-GMB |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

G. Baron Coleman
BARON COLEMAN LAW FIRM
18117 Biscayne Blvd # 60460
Miami, FL 33160
334-625-9097
baron@baroncoleman.com

Ronald D. Coleman
COLEMAN LAW FIRM, PC
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611
rcoleman@colemanlaw-pc.com
*Attorneys for Plaintiff*
*Gavin McInnes*

# CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND ...................................................................................................... 2

ARGUMENT ............................................................................................................................... 3

    I.    LEGAL STANDARD FOR MOTIONS TO DISMISS ....................................................... 3

    II.    NEW YORK'S ANTI-SLAPP LAW DOES NOT APPLY TO THIS ACTION .............. 5

    III.    MR. MCINNES HAS SUFFICIENTLY ALLEGED ACTUAL MALICE FOR EACH OF THE TEN CHALLENGED STATEMENTS ................................................................. 12

    IV.    STATEMENTS ABOUT THE PROUD BOYS CAN BE UNDERSTOOD TO REFER TO MR. MCINNES PERSONALLY ........................................................................ 16

    V.    THE CHALLENGED STATEMENTS ARE NOT PROTECTED OPINIONS .............. 19

    VI.    SPLC'S REMAINING ARGUMENTS INVOLVE FACTUAL DISPUTES THAT SHOULD NOT BE RESOLVED ON A MOTION TO DISMISS .......................................... 27

CONCLUSION ............................................................................................................................ 32

# TABLE OF AUTHORITIES

**Cases**

*Acme Energy Servs. v. Heritage Consol., L.L.C. (In re Heritage Consol., L.L.C.)*, 765 F.3d 507 (5th Cir. 2014) .............................................................................................................. 10

*Adelson v. Harris*, 973 F.Supp.2d 467 (S.D.N.Y. 2013) ................................................. 29

*Algarin v. Town of Wallkill*, 421 F.3d 137 (2d Cir. 2005) .............................................. 21

*Allen v. Hays*, 63 F.4th 307 (5th Cir. 2023) ..................................................................... 6

*Angio-Medical Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269 (S.D.N.Y. 1989) ................... 21

*Arup United States Inc. v. Akmansoy*, No. 3:24-cv-00128-B, 2025 U.S. Dist. LEXIS 29561 (N.D. Tex. Jan. 27, 2025) ............................................................................................. 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 7

*Biro v. Condé Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012) ............................................. 35

*Boelens v. Redman Homes, Inc.*, 759 F.2d 504 (5th Cir. 1985) ....................................... 13

*Bose Corp. v. Consumers Union of United States, Inc.*, 692 F.2d 189 (1st Cir. 1982) ...... 8

*Bremner v. Bush*, 2025 NY Slip Op 07271 (App. Div. 2nd Dept. 2025) ......................... 10

*Brian v. Richardson*, 87 N.Y.2d 46 (1995) ...................................................................... 24

*CadleRock, L.L.C. v. Morey (In re Morey)*, 2012 Bankr. LEXIS 656 (Bankr. S.D. Tex. Feb. 21, 2012) ................................................................................................................... 6

*Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001) ......................... 8. 15

*Church of Scientology Int'l v. Time Warner*, 932 F. Supp. 589 (S.D.N.Y. 1996) ........... 35

*Coleman v. Grand*, 158 F.4th 132 (2d Cir. 2025) ..................................................... 11, 23

*Como v. Riley*, 287 A.D.2d 416 (App. Div. 1st Dept. 2001) ........................................... 24

*Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921 (2d Cir. 1987) .......................... 8

*Diaz v. NBC Universal, Inc.*, 337 F. App'x 94 (2d Cir. 2009) ........................................ 20

*Earl v. Boeing Co.*, 611 F. Supp. 3d 345 (M.D. Ala. 2020) ........................................... 6

*Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48 (S.D.N.Y. 2021) ...................................... 18

*Fuller v. Eisai Inc.*, 513 F. Supp. 3d 710 (N.D. Tex. 2021) ........................................... 6

*Garcia v. Puccio*, 17 A.D.3d 199 (App. Div. 1st Dept. 2005) ........................................ 30

*Goldman v. Reddington*, 417 F.Supp.3d 163 (2019) ...................................................... 33

*Goldwater v. Ginzburg*, 414 F.2d 324, 342 (2d Cir. 1969) ............................................. 8

*Gottwald v. Sebert*, 40 N.Y.3d 240 (2023) ................................................................ 10, 12

*Gross v. Cantor*, 270 N.Y. 93 (1936) .............................................................................. 19

*Gross v. N.Y. Times Co.*, 82 N.Y.2d 146 (1993)..................................................................... 25

*Heaven v. Gonzales*, 473 F.3d 167 (5th Cir. 2006).................................................................. 11

*Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563 (5th Cir. 1985)...................................... 13

*Hull v. Town of Prattsville*, 145 A.D.3d 1385 (App. Div. 2016)........................................ 23

*Jeansonne v. Generation Mortg. Co.*, 644 Fed. Appx. 355 (5th Cir. 2016) ....................... 7

*Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348 (S.D.N.Y. 1998) ............................ 31, 34, 35

*Johnson v. Miller*, 126 F.4th 1020 (5th Cir. 2023) ............................................................ 12

*Kipper v NYP Holdings Co., Inc.,* 12 N.Y.3d 348 (2009) ........................................... 15, 16

*Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019)............................................... 7, 9, 10, 16

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010) ................................................ 13

*Lighthouse Baptist Church, Inc. v. Chemung Cty.*, No. 6:20-CV-7000 EAW, 2022 U.S. Dist. LEXIS 167797 (W.D.N.Y. Sep. 16, 2022) ...................................................... 18

*Mencher v. Chesley*, 297 N.Y. 94 (1947) ..................................................................... 21, 22

*Milkovich v. Lorain J. Co.*, 497 U.S. 1 (1990)................................................................... 29

*Miserendino v. Cai*, 218 A.D.3d 1261 (App. Div. 4th Dept. 2023)................................... 29

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)............................................................... 7

*National Academy of Television Arts and Sciences, Inc. v. Multimedia System Design, Inc.*, 551 F.Supp.3d 408 (2021)................................................................................ 15

*Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825 (5th Cir. 2014)....................... 9

*NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742 (5th Cir. 2014) ................................ 14

*Palin v. N.Y. Times Co.*, 940 F.3d 804 (2d Cir. 2019)....................................................... 7

*Richards v. McLane*, 2023 U.S. App. LEXIS 26714 (5th Cir. Oct. 6, 2023) ............................ 12

*Silsdorf v. Levine*, 59 N.Y.2d 8 (1983) ............................................................................. 18

*Sorvillo v. St. Francis Preparatory Sch.*, 607 F. App'x 22 (2d Cir. 2015)................................ 25

*Sprewell v. NYP Holdings, Inc.*, 1 Misc. 3d 847 (Sup. Ct. N.Y. Co.. 2003) ................................ 34

*Steinhilber v. Alphonse*, 68 N.Y.2d 283 (N.Y. 1986) ...................................................... 25

*Tex. Entm't Ass'n v. Hegar*, 10 F.4th 495 (5th Cir. 2021)......................................... 11, 14

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 28 N.Y.3d 82 (2016) ...................................... 20

*VIP Pet Grooming Studio, Inc. v. Sproule*, 224 A.D.3d 78 (App. Div. 2nd Dept. 2024)....... 10, 14

**Statutes**

N.Y. Civ. Rights Law §§ 70-a .................................................................................... 8, 15

N.Y. Penal Law § 10.00(12) ........................................................................................ 33

**Rules**

3212(h) ............................................................................................................................ 8

CPLR § 3211(g) ...................................................................................................... 14, 15

Fed. R. Civ. P. 12(b)(6) ................................................................................... 6, 7, 8, 16

Fed. R. Civ. P. 15 ......................................................................................................... 13

N.Y. C.P.L.R. § 3211(g) ................................................................................................ 8

**Treatises**

Restatement (Second) of Torts § 566 (1977) .............................................................. 25

## PRELIMINARY STATEMENT

SPLC's motion to dismiss should be denied because the SAC adequately states claims for defamation under New York law. First, under New York's liberal standard for reviewing motions to dismiss, the Court must accept Mr. McInnes's allegations as true and draw all reasonable inferences in his favor. The SAC satisfies the pleading requirements for defamation claims by identifying each allegedly defamatory statement with particularity and explaining why each statement is false.

Second, the SAC sufficiently alleges actual malice for each of the ten challenged statements. Mr. McInnes has alleged facts that, if proven, would allow a reasonable jury to find that SPLC published the statements with knowledge of their falsity or reckless disregard for whether they were false. At the motion to dismiss stage, Mr. McInnes need only allege facts showing that SPLC acted with actual malice, not prove actual malice by clear and convincing evidence.

Third, the statements about the Proud Boys can reasonably be understood to refer to Mr. McInnes personally given his prominent role as the group's founder and leader. Under New York law, statements about a group can be "of and concerning" an individual member when the circumstances of the publication reasonably give rise to the conclusion that there is a particular reference to the plaintiff.

Fourth, the challenged statements are not protected opinions but rather contain or imply provably false factual assertions. Even if some statements contain elements of opinion, they are actionable because they imply the existence of undisclosed defamatory facts.

Finally, SPLC's arguments regarding substantial truth, defamatory meaning, and incremental harm involve factual disputes that cannot be resolved on a motion to dismiss. These arguments should be addressed after discovery, not at the pleading stage.

1

At this early stage, the Court must accept Mr. McInnes's factual allegations as true and draw all reasonable inferences in his favor. The fact-based defenses raised by SPLC are inappropriate for resolution on a motion to dismiss and should be addressed through discovery. For these reasons, Mr. McInnes respectfully requests that the Court deny SPLC's motion in its entirety and allow this case to proceed.

## FACTUAL BACKGROUND

Gavin McInnes is a public figure known as a humorist, political commentator, and founder of the Proud Boys, a men's organization that he has described as a social club for "Western chauvinists." The Proud Boys have chapters across the United States and internationally. Mr. McInnes has long been a controversial figure due to his provocative statements on race, gender, religion, and culture, and his leadership of the Proud Boys has drawn significant public attention.

Beginning in 2017, SPLC published numerous articles and maintained an online profile designating the Proud Boys as a "hate group." SPLC's publications included over thirty statements across ten articles that Mr. McInnes alleges are false and defamatory. These statements characterize the Proud Boys as a militant "military arm of the Alt-Right," accuse Mr. McInnes of "full-heartedly supporting" the violent Unite the Right rally, allege that the Proud Boys "show up at pro-Trump rallies looking to rumble," and assert that Mr. McInnes denigrated Muslims and used racial slurs against Asian Americans, among other damaging claims.

Mr. McInnes alleges that SPLC published these statements with actual malice, knowing or recklessly disregarding their falsity. For example, SPLC was aware of Mr. McInnes's public disavowal of the Unite the Right rally and the Proud Boys' bylaws prohibiting white supremacists and anti-Semites, yet SPLC published statements directly contradicting these facts. Mr. McInnes further alleges that SPLC failed to contact him or any knowledgeable source to

verify the challenged statements before publication.

As a direct result of SPLC's defamatory publications, Mr. McInnes has suffered severe reputational harm, including being banned from major social media platforms, losing employment opportunities, and experiencing social ostracism and harassment in his community. Mr. McInnes contends that SPLC's false statements have caused irreparable damage to his personal and professional life.

Mr. McInnes filed the SAC in compliance with this Court's prior order, separating each allegedly defamatory statement into individual counts and providing factual allegations addressing the First Amendment requirements for public-figure defamation claims, including actual malice. SPLC now moves to dismiss the SAC, arguing that Mr. McInnes fails to state a claim. Mr. McInnes disputes these contentions and submits that the SAC sufficiently alleges all elements of defamation under New York law.

## ARGUMENT

### I. LEGAL STANDARD FOR MOTIONS TO DISMISS

Under Fifth Circuit law, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face" *Earl v. Boeing Co.*, 611 F. Supp. 3d 345 (M.D. Ala. 2020), *Allen v. Hays*, 63 F.4th 307 (5th Cir. 2023). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *CadleRock, L.L.C. v. Morey (In re Morey)*, 2012 Bankr. LEXIS 656, at 6 (Bankr. S.D. Tex. Feb. 21, 2012); *Fuller v. Eisai Inc.*, 513 F. Supp. 3d 710 (N.D. Tex. 2021).

Regardless of whether a state anti-SLAPP law applies, see *infra*, the standard for reviewing a motion to dismiss under Rule 12(b)(6) in the Fifth Circuit follows the Supreme

3

Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As stated in *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019) "Under Rule 12(b)(6), a federal court may dismiss a case for failure to state a claim upon which relief may be granted if, accepting all well-pleaded factual allegations as true, the complaint does not state a plausible claim for relief." *Id.* at 244. The Fifth Circuit has further elaborated on this standard, stating that the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jeansonne v. Generation Mortg. Co.*, 644 Fed. Appx. 355 (5th Cir. 2016).

At this stage, then, the Court's role is limited to determining whether the complaint states a legally cognizable claim, not whether the plaintiff will ultimately prevail on the merits . Factual disputes and credibility determinations are inappropriate for resolution on a motion to dismiss . This standard ensures that claims with a reasonable basis in law and fact are allowed to proceed to discovery, where the parties can develop the evidentiary record necessary to resolve the dispute.

A.       **Pleading Requirements for Public Figure Defamation Claims**

Under New York law, a complaint asserting defamation claims must plausibly allege five elements: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). When a defamation claim is brought by a public figure, the First Amendment independently requires a showing that the defendant acted with actual malice. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964).

Actual malice requires that the complaint plausibly allege that the defendant published the defamatory statements that form the basis of the claims "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *Palin*, 940 F.3d at 809 (internal

quotation marks omitted). "The reckless conduct needed to show actual malice is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing, but by whether there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication[.]" *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (internal quotation marks and citations omitted). Although actual malice   is subjective, a "court typically will infer actual malice from objective facts." *Bose Corp. v. Consumers Union of United States, Inc.*, 692 F.2d 189, 196 (1st Cir. 1982) ("whether [defendant] in fact entertained serious doubts as to the truth of the statement may be proved by inference, as it would be rare for a defendant to admit such doubts."), *aff'd*, 466 U.S. 485 (1984); *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987) ("Malice may be proved inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted."). These facts should provide evidence of "negligence, motive and intent such that an accumulation of the evidence and appropriate inferences supports the existence of actual malice." *Bose Corp.*, 692 F.2d at 196.  "There is no doubt that evidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity" *Goldwater v. Ginzburg*, 414 F.2d 324, 342 (2d Cir. 1969).

## II.    NEW YORK'S ANTI-SLAPP LAW DOES NOT APPLY TO THIS ACTION

New York's anti-SLAPP law, as amended in 2020, N.Y. Civ. Rights Law §§ 70-a, 76-a and N.Y. C.P.L.R. §§ 3211(g), 3212(h), does not apply to this action for three key reasons. First, under Fifth Circuit precedent, New York's anti-SLAPP special motion to dismiss procedure directly conflicts with Fed. R. Civ. P. 12, rendering it inapplicable in federal court. While the Fifth Circuit has allowed Louisiana's anti-SLAPP statute to apply in federal court as

"functionally substantive," it has more recently held that Texas's similar anti-SLAPP provisions cannot apply in federal court due to this direct conflict with the Federal Rules. *Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019). .

Second, even if certain substantive provisions of New York's anti-SLAPP law could apply in federal court, they should not apply retroactively to the original complaint, as detailed below. The retroactivity analysis requires clear legislative intent for retroactive application, which is absent here. Retroactive application would raise significant due process concerns by disrupting settled expectations and attaching new legal consequences to actions taken before the law's enactment.

Third, the filing of the amended complaint in December 2025 does not reset the clock for applying New York's anti-SLAPP law. Under the relation-back doctrine, an amended complaint that relates back to the original complaint does not create new rights or reset the clock for applying legal standards. Applying New York's anti-SLAPP law to the amended complaint when it would not apply to the original complaint would give a different and more oppressive legal effect to conduct undertaken before the law's enactment, raising due process concerns.

### B.     The Erie Doctrine and Direct Collision Test

Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law. *Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825 (5th Cir. 2014). When a party alleges a direct conflict between Federal Rules and state law, the initial step is to determine whether the Federal Rule's scope is "sufficiently broad to cause a direct collision with the state law or, implicitly, to control the issue before the court, thereby leaving no room for the operation of that law." *Id*. If a direct collision exists, the court must apply the federal rule as long as it does not violate the Constitution or the Rules Enabling Act. *Id*.

### C. The Fifth Circuit's Approach to Anti-SLAPP Statutes in Federal Court

The Fifth Circuit has taken different approaches to different states' anti-SLAPP statutes, but in 2019 the Fifth Circuit held that Texas's anti-SLAPP statute does not apply in federal court because it conflicts with Fed. R. Civ. P. 12 and 56. *Klocke*, 936 F.3d at 244. The court found that "the TCPA's burden-shifting framework imposes additional requirements beyond those found in Rules 12 and 56 and answers the same question as those rules," making it inapplicable in federal court under the Erie doctrine. This remains the law in this Circuit. *Arup United States Inc. v. Akmansoy*, No. 3:24-cv-00128-B, 2025 U.S. Dist. LEXIS 29561, at *5 (N.D. Tex. Jan. 27, 2025).

### D. New York's Anti-SLAPP Law Does Not Apply Retroactively to The Original Complaint

#### 1. Legal Framework for Retroactivity Analysis

In diversity cases, the Fifth Circuit must apply state law as interpreted by the state courts. *Acme Energy Servs. v. Heritage Consol., L.L.C. (In re Heritage Consol., L.L.C.)*, 765 F.3d 507, 511 (5th Cir. 2014).Most New York courts have concluded that the 2020 amendments to New York's anti-SLAPP laws do **not** apply retroactively. *Gottwald v. Sebert*, 40 N.Y.3d 240, 260 (2023). "The amendments to the statute protecting against strategic lawsuits against public participation (hereinafter anti-SLAPP) are not retroactively applied unless the action was within the scope of the former anti-SLAPP statute when commenced and if continued after the effective date of the 2020 anti-SLAPP amendments." *Bremner v. Bush*, 2025 NY Slip Op 07271, 2 (App. Div. 2nd Dept. 2025); *The Isaly v. Garde*, 241 A.D.3d 1085, 1088, 243 N.Y.S.3d 7 (App. Div. 1st Dept. 2025); *VIP Pet Grooming Studio, Inc. v. Sproule*, 224 A.D.3d 78, 89 (App. Div. 2nd Dept 2024); *Hoi Trinh v. Nguyen*, 211 A.D.3d 1623, 1624 (App. Div. 4th Dept. 2022). This has been recognized in post-*Gottwald* decisions by the federal courts applying New York law as

well.  *See*, *Coleman v. Grand*, 158 F.4th 132, 152 (2d Cir. 2025) ("New York's  revised anti-SLAPP statute . . . likely does not apply here because its application would be retroactive").

The Fifth Circuit is also bound, however, by its own precedent interpreting state law unless there has been an intervening change in authority.  The Supreme Court has established a two-part test to determine when statutes may be applied retroactively: first, ascertain whether the legislature has directed "with the requisite clarity that the law be applied retrospectively"; second, if no express command exists, determine whether retroactive application would have an "impermissible retroactive effect."  *Heaven v. Gonzales*, 473 F.3d 167, 174 (5th Cir. 2006). This approach ensures that legislatures themselves have "determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." *Id*.

The retroactivity analysis demands "a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." *Ventura v. Sessions*, 907 F.3d 306, 310 (5th Cir. 2018). A statute operates retroactively when it would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id*. Courts must consider "familiar considerations of fair notice, reasonable reliance, and settled expectations" when conducting this analysis. *Id*.

### (a)  Due Process Concerns in Retroactive Application

"Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly."  *Tex. Entm't Ass'n v. Hegar*, 10 F.4th 495, 511 (5th Cir. 2021). This principle is particularly relevant here, as retroactive application of New York's expanded anti-SLAPP law would potentially disrupt the settled expectations of the plaintiff who filed the original complaint before December 2025.

For retroactive application of a law to be constitutional, it must not be "so harsh and

oppressive as to transgress ... constitutional limitation[s]." *Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021). Courts must consider "whether, without notice, a statute gives a different and more oppressive legal effect to conduct undertaken before enactment of the statute." *Id.* New York's 2020 amendments significantly expanded the scope and protections of its anti-SLAPP law, potentially creating a "different and more oppressive legal effect" on defamation claims filed before the amendments. Retroactive application of laws can violate substantive due process because "the Due Process Clause protects the interests in fair notice and repose that may be compromised by retroactive legislation." *Richards v. McLane*, 2023 U.S. App. LEXIS 26714, at 8 (5th Cir. Oct. 6, 2023).

### (b) Absence of Clear Legislative Intent for Retroactivity

Under the Supreme Court's retroactivity framework, the first step is to determine whether the legislature has directed "with the requisite clarity that the law be applied retrospectively." *Heaven v. Gonzales*, supra, 473 F.3d at 174. This requires an "unambiguous directive"; the "existence of plausible alternative explanations for statutory language means that the first part of the test cannot be satisfied." *Id.* Given the significant due process concerns raised by retroactive application of New York's anti-SLAPP law, and the absence of an unambiguous directive from the New York legislature, *Gottwald*, 40 N.Y.3d at 260, the law should not apply retroactively to the original complaint filed more than six years before December 2025.

### 2. The December 2025 Amended Complaint Does Not Reset the Clock for Applying New York's Anti-SLAPP Law

### (a) The Relation-Back Doctrine

Under Federal Rule of Civil Procedure 15, when an amended pleading relates back to the date of a timely filed original pleading, it is itself timely even though it was filed outside an applicable statute of limitations. *Johnson v. Miller*, 126 F.4th 1020, 1024 (5th Cir. 2023). An amended complaint relates back to the date of the original pleading when "the amendment

asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." *Id*.; Fed. R. Civ. P. 15.

Relation back is typically allowed "if a plaintiff seeks to correct a technical difficulty, state a new legal theory of relief, or amplify the facts alleged in the prior complaint." *Id*. The critical element in relation-back determinations is ultimately notice: courts must ask whether the opposing party was put on notice of the claim. *Holmes v. Greyhound Lines, Inc*., 757 F.2d 1563, 1566 (5th Cir. 1985). The Supreme Court has explained that Rule 15(c) governs when an amended pleading relates back to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations. *Krupski v. Costa Crociere S. p. A*., 560 U.S. 538, 541 (2010).

### (b) Amended Complaints Do Not Reset the Clock for Applying New Legal Standards

While it is true that an amended complaint ordinarily supersedes the original and renders it of no legal effect, *Boelens v. Redman Homes, Inc*., 759 F.2d 504, 508 (5th Cir. 1985), this principle does not extend to resetting the clock for retroactivity analysis. The superseding effect of an amended complaint primarily relates to the pleadings themselves, not to the temporal application of substantive law.

The Fifth Circuit has consistently held that when an amended complaint relates back to the original complaint, it does not create new rights or reset the clock for applying legal standards. *Carney v. Resolution Trust Corp*., 19 F.3d 950, 954 (5th Cir. 1994). In fact, the Circuit has recognized that relation back applies even when the amendment states a new basis for subject matter jurisdiction. *Id*.

10

### (c) Due Process Concerns in Applying Anti-SLAPP Law to Amended Complaint

Applying New York's anti-SLAPP law to the amended complaint, when it would not apply to the original complaint, would give a "different and more oppressive legal effect to conduct undertaken before [its] enactment," as the Court of Appeals described a similar retroactivity question in *Tex. Entm't Ass'n v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021). This raises the same due process concerns discussed in relation to the original complaint.

The timing of the amended complaint (December 2025, approximately five years after the 2020 amendments to New York's anti-SLAPP law) does not strengthen the argument for applying the law to the amended complaint. The critical factor is not the passage of time but whether applying the law retroactively would be fair and consistent with due process. In this regard, cases interpreting New York's procedural CPLR § 3211(g), such as *VIP Pet Grooming Studio, supra*, 224 A.D.3d at 89 ("it is of no moment that the [defendant's] dismissal motion was filed after the anti-SLAPP amendments had gone into effect" when the motion was "addressed to a complaint that precedes the November 10, 2020 effective date") appear to be of limited value because they are premised on New York state court jurisprudence.

### (d) Judicial Economy Considerations

An anti-SLAPP motion "resolves a question separate from the merits in that it merely finds that such merits may exist, without evaluating whether the plaintiff's claim will succeed." *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 745 (5th Cir. 2014). The motion is decided before proceeding to trial, and immediate appellate review would determine an issue separate from any issues that remain before the district court.

Applying New York's anti-SLAPP law to the Second Amended Complaint would not promote judicial economy if it would not apply to the original complaint. It would create a bifurcated approach where some claims are subject to the anti-SLAPP standard while others are

11

not, leading to confusion and inconsistent results. And it would penalize Mr. McInnes for the passage of time since the filing of his original Complaint a full year before the 2020 amendments to the New York anti-SLAPP law, which was beyond his control.

This framework ensures that defamation claims brought by public figures are properly evaluated under the applicable Fifth Circuit standards, balancing the plaintiff's right to pursue legitimate claims with the First Amendment protections for speech on matters of public concern.

## III. MR. MCINNES HAS SUFFICIENTLY ALLEGED ACTUAL MALICE FOR EACH OF THE TEN CHALLENGED STATEMENTS

### A. The Actual Malice Standard

"[A] public figure plaintiff must prove that an allegedly libelous statement was made with actual malice, that is, made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Church of Scientology Int'l v. Behar*, 238 at 173-74 . Reckless disregard means "a high degree of awareness of probable falsity" or that the defendant "entertained serious doubts as to the truth of the publication." *Kipper v NYP Holdings Co., Inc.*, 12 N.Y.3d 348, 354 (2009).

At the motion to dismiss stage, a plaintiff need only allege facts that, if proven, would allow a reasonable jury to find actual malice by clear and convincing evidence. A "clear and convincing evidence" proving actual malice is not needed to survive a motion to dismiss; it is enough that plaintiffs "allege facts showing that defendant acted with actual malice" – notwithstanding the anti-SLAPP law. New York Civil Rights Law § 70-a and CPLR § 3211(g) impose a "substantial basis" standard that conflicts with Federal Rule 12(b)(6)'s plausibility standard – a "different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure." *National Academy of Television Arts and Sciences, Inc. v. Multimedia System Design, Inc.*, 551 F.Supp.3d 408 (2021). In the event, it is the Federal Rules that must govern with respect to the standard for a motion to dismiss. *Id*. at 432. *Accord*, *Bobulinski v.*

*Tarlov*, 758 F. Supp. 3d 166, 185 n. 17 (S.D.N.Y. 2024); *La Liberte v. Reid*, 966 F.3d 79, 88 (2d Cir. 2020). As set forth above, this also the rule in the Fifth Circuit: Rule 12(b)(6) applies regardless of state anti-SLAPP standards under *Klocke*, 936 F.3d at 244.

**B.**     **Mr. McInnes Has Alleged Facts Supporting an Inference of Actual Malice for Each Count**

For each of the ten challenged statements, Mr. McInnes has alleged facts that, when accepted as true and given every favorable inference, support a plausible inference of actual malice:

1. ***Count I*** (Mr. McInnes "full-heartedly supports" the rally): Mr. McInnes alleges SPLC knew about his public disavowal of the Unite the Right rally six weeks before publishing the statement yet chose to publish the opposite. This allegation, if proven, would allow a jury to find SPLC acted "with a high degree of awareness of probable falsity."

2. ***Count II*** (Proud Boys as "military arm of the Alt-Right"): Mr. McInnes alleges SPLC knew he had explicitly disavowed the Alt-Right and described the Proud Boys as a social club, not a militant organization. This allegation supports an inference that SPLC "entertained serious doubts as to the truth" of its publication.

3. ***Count III (***Proud Boys "looking to rumble"): Mr. McInnes alleges SPLC knew the Proud Boys do not attend rallies seeking to engage in violence and that it is against their policies to do so. This allegation, if proven, would support a finding that SPLC published with "reckless disregard of whether it was false."

4. ***Count IV*** (denigrating Muslims and using slurs): Mr. McInnes alleges SPLC had no evidence he made these statements, suggesting reckless disregard for the truth. This is similar to the evidence in *Kipper v. NYP Holdings Co.*, *supra*, where the Court found sufficient evidence of actual malice.

5. ***Count V*** (devising recruiting ground for white supremacists): Mr. McInnes alleges SPLC knew the Proud Boys' bylaws explicitly prohibited white supremacists and anti-

Semites from membership yet published the opposite. This allegation supports an inference of "knowledge of its falsity."

6. ***Count VI*** (offering "a chance to duke it out"): Mr. McInnes alleges SPLC had no evidence that the Proud Boys offers people a chance to engage in street violence, suggesting reckless disregard for the truth. This allegation is like the evidence in Kipper v. NYP Holdings Co. where the Court found sufficient evidence of actual malice.

7. ***Count VII*** (bringing a samurai sword): Mr. McInnes alleges SPLC had access to information showing the sword was a toy, not a real samurai sword, suggesting knowledge of falsity or reckless disregard for the truth. This allegation supports an inference that SPLC "knew or suspected" the falsity of the statement.

8. ***Count VIII*** (attending "an anti-Muslim rally"): Mr. McInnes alleges SPLC mischaracterized the nature of the rally he attended, which was a March Against Sharia, not an anti-Muslim rally, suggesting knowledge of falsity or reckless disregard for the truth. This allegation supports an inference of "reckless disregard of whether it was false."

9. ***Count IX*** (embracing "central tenets of white nationalism"): Mr. McInnes alleges SPLC was aware the Proud Boys' bylaws explicitly prohibit white nationalism yet published the opposite. This allegation supports an inference of "knowledge of its falsity."

10. ***Count X*** (utilizing "subterfuge and lies"): Mr. McInnes alleges SPLC had no evidence he engaged in subterfuge and lies, suggesting reckless disregard for the truth.

These allegations, when accepted as true and given every favorable inference, support a plausible inference that SPLC either knew the statements were false or entertained serious doubts about their truth. Mr. McInnes has adduced "cogent, direct evidence from which a jury could have inferred that defendant knew or suspected" that the statements were false. No more is required at the pleadings stage.

**C. SPLC's Arguments Regarding Actual Malice Are Premature**

SPLC argues that Mr. McInnes fails to plausibly allege actual malice for any of the ten challenged statements. This argument is premature at the motion to dismiss stage, where the court must accept Mr. McInnes's allegations as true and draw all reasonable inferences in his favor. Thus it is of no moment at the pleadings stage that SPLC's seeks to rebut these allegations by averring to its reliance on hyperlinks and other sources to support its defamatory statements; exactly what SPLC did before it published what it did, and the reasonableness of its credulity under the circumstances, are fact questions that must be resolved in Mr. McInnes's favor.

"In general, 'the issue of actual malice is more appropriately weighed at a later stage of the proceedings' than at the motion to dismiss stage." *Lighthouse Baptist Church, Inc. v. Chemung Cty.*, No. 6:20-CV-7000 EAW, 2022 U.S. Dist. LEXIS 167797, at *23 (W.D.N.Y. Sep. 16, 2022), quoting *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 57 (S.D.N.Y. 2021). Similarly, the New York Court of Appeals held that when a "complaint alleges the actual malice element of the defamation cause of action," there is "no reason to prevent plaintiff from attempting to prove that defendants published the letter with actual malice." *Silsdorf v. Levine*, 59 N.Y.2d 8, 17 (1983).

SPLC's reliance on cases holding that failure to investigate alone does not establish actual malice is misplaced. Mr. McInnes's action does not rely solely on SPLC's failure to investigate, but rather on specific facts showing that SPLC had knowledge of information contradicting its statements or recklessly disregarded that knowledge yet published them anyway. As the court explained in Greenberg v. Spitzer, "where there are obvious reasons to doubt the veracity" of the information, that can give rise to an inference of actual malice. *Greenberg v. Spitzer*, 2020 NY Slip Op 51318(U), 22, 69 Misc. 3d 1214(A) (Sup. Ct. Putnam Co. 2020). As the United States Supreme Court taught in *Harte-Hanks Commc'ns v.*

*Connaughton*, 491 U.S. 657, 692 (1989) "The purposeful avoidance of the truth is in a different category from mere failure to investigate." It is the purposeful avoidance of the truth that forms the gravamen of the Second Amended Complaint.

**IV.    STATEMENTS ABOUT THE PROUD BOYS CAN BE UNDERSTOOD TO REFER TO MR. MCINNES PERSONALLY**

**A.  The "Of and Concerning" Requirement Under New York Law**

Under New York law, a fundamental requirement of any defamation claim is that the allegedly defamatory statement must be "of and concerning" the plaintiff. This requirement ensures that a plaintiff can only recover for defamatory statements that actually refer to them. New York law requires that in an action for libel or slander, "the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally." . This statutory provision recognizes that while the exact words must be specified, how those words apply to the plaintiff is a matter that can be developed through evidence.

New York courts have long recognized that defamatory statements about a group can, in certain circumstances, be understood to refer to individual members of that group. As established in *Gross v. Cantor*, "if the words may by any reasonable application import a charge against several individuals, under some general description or general name, the plaintiff has the right to go on to trial, and it is for the jury to decide whether the charge has the personal application averred by the plaintiff."  270 N.Y. 93, 94 (1936).  This principle has been consistently upheld in New York jurisprudence.

**B.  When Statements About a Group Can Be "Of and Concerning" an Individual Member**

While statements about a large group generally cannot give rise to a defamation claim by an individual member, statements about a small group or about the leader of a group can be "of and concerning" that individual. "The underlying premise of this principle is that the larger the

collectivity named in the libel, the less likely it is that a reader would understand it to refer to a particular individual. However, where a group is sufficiently small, a defamation claim may be viable because reference to the individual plaintiff reasonably follows from the statement and the question of reference is left for the jury." *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 28 N.Y.3d 82, 90 (2016) (internal quotes and citations omitted).

New York courts have established that "a plaintiff's claim is insufficient if the allegedly defamatory statement referenced the plaintiff solely as a member of a group, unless the plaintiff can show that the circumstances of the publication reasonably give rise to the conclusion that there is a particular reference to the plaintiff." *Diaz v. NBC Universal, Inc.*, 337 F. App'x 94, 96 (2d Cir. 2009). Here, Mr. McInnes was not merely a member of the Proud Boys but its founder and leader during the relevant period – essentially epitomizing the application of this principle, as discussed in more detail in the following section.

### C. Mr. McInnes's Prominent Role in the Proud Boys Makes Statements About the Proud Boys Personally Applicable

As the founder and leader of the Proud Boys, Mr. McInnes had a prominent role that makes statements about the organization reasonably understood to reflect on him personally. Indeed, the challenged statements frequently mention Mr. McInnes by name in connection with the Proud Boys and routinely elide the difference between him personally and the group, creating a close association between Mr. McInnes and the organization in the mind of the reader. This close association is precisely the type of circumstance that "reasonably give[s] rise to the conclusion that there is a particular reference to the plaintiff," as enunciated in *Diaz*, *supra*.

Unlike an ordinary member of a large organization, a founder and leader bears responsibility for the organization's character, actions, and beliefs – especially where, as here, that person is himself charismatic and well known in his own right. When SPLC makes statements about the Proud Boys as an organization, these statements necessarily implicate Mr.

McInnes as the individual who created and led the organization during the relevant period. The reasonable reader would understand statements about the Proud Boys' beliefs, actions, and character to reflect on Mr. McInnes personally as the architect of the organization.

"Another relevant circumstance is whether the defamatory statement refers to 'all' or only 'some' members of the group." *Algarin v. Town of Wallkill*, 421 F.3d 137, 140 (2d Cir. 2005). When a statement refers to all members of a group, it is more likely to be understood as referring to an individual member than a statement that only refers to "some" members. Here, SPLC's statements about the Proud Boys uniformly refer to the organization as a whole, not just to some members, making it more likely that they would be understood as referring to Mr. McInnes personally – which was SPLC's obvious intent.

### D. The "Of and Concerning" Question Is a Factual Issue Not Appropriate for Dismissal

While the foregoing analysis clearly counsels against dismissal, whether the challenged statements are "of and concerning" Mr. McInnes is a factual question that should not be resolved on a motion to dismiss. *Angio-Medical Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 273 (S.D.N.Y. 1989) (where the pleadings are ambiguous "and extrinsic facts may be necessary to show that the words relate to the plaintiff, the question of whether the statements are in fact imputable to the plaintiff is, like the question of whether the statements are defamatory, better left to a jury").

This rule of law is not one that meant to protect only one or the other end of the political spectrum as exemplified by *Mencher v. Chesley*, 297 N.Y. 94 (1947). In Mencher, the defendant was fired from his job, following which he issued a press release that seemed to, but did not quite, accuse plaintiff of being a communist.[1] After the employer sued, the defendant moved to

---

[1] Such an association, of course, was readily understood by the court to be defamatory. 297 N.Y. at 100-101 ("it is undeniable that for communism and its adherents and sympathizers, there has been widespread public aversion . . . it is of little moment whether the statement describes plaintiff as a communist or as one having communistic sympathies and affiliations, for, as has been observed, 'any difference is one of degree only'").

dismiss on the ground, *inter alia*, that the statement described in the complaint had not precisely named plaintiff. The New York Court of Appeals denied the motion, with Chief Judge Fuld writing as follows:

> While in the present case there was no direct charge that plaintiff was a communist or had communist affiliations or that he had misused his public office, the statement, read against the background of its issuance, under the circumstances of its publication, is certainly susceptible of such a construction. . . . We do not – indeed, we may not – determine that that is the only meaning to be placed upon the words used; to do so would encroach upon the province of the jury. It is enough that reasonable basis exists for such an interpretation. Once that is decided, it becomes the jury's function to say whether that was the sense in which the words were likely to be understood by the ordinary and average reader.

297 N.Y. at 99. Here, too, to the extent there is any doubt, it is a jury that should decide whether a reasonable reader of SPLC's statements could have failed to understand that they referred to Mr. McInnes.

## V.        THE CHALLENGED STATEMENTS ARE NOT PROTECTED OPINIONS

### A.  The Distinction Between Fact and Opinion Under New York Law

Under New York law, statements of pure opinion are protected, but statements that imply undisclosed facts or mixed opinion and fact can be actionable. In determining whether a statement is one of fact or opinion, courts consider three factors: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication or the broader social context and surrounding circumstances are such as to signal readers that what is being read is likely to be opinion, not fact. Courts must "look to the over-all context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the plaintiff" rather than "sifting through a communication for the purpose of isolating and identifying assertions of fact." *Hull v. Town of Prattsville*, 145 A.D.3d 1385 (App. Div. 2016).

When evaluating these factors, therefore, courts are to adopt a holistic approach that accounts for the content of the communication as a whole, its tone, and apparent purpose." *Coleman v. Grand*, *supra*, 158 F.4th at 139 (cleaned up).

SPLC asserts that "the challenged statements 'that the Proud Boys are known as "the military arm of the Alt-Right," are 'the most fertile "in-real-life" recruiting ground for white supremacists and anti-Semites,' have 'right-wing converts,' 'embrace [the] central tenets of white nationalism,' and that McInnes 'attended "an anti-Muslim rally"' and is an 'extremist'" are mere opinion. In other words, their argument goes, as long as obviously factual claims are larded with constitutionally protected opprobrium, those factual claims become opinions. This is not the law, as explained below.

### B. The Challenged Statements Imply Factual Assertions

Several of the challenged statements imply factual assertions that are provably true or false. For example, whether Mr. McInnes "full-heartedly supports" a rally, whether he "denigrated Muslims and called Asian Americans 'slopes' and 'riceballs'," or whether he "brought a samurai sword" to an event are factual claims that can be proven true or false. Other statements, such characterizing the Proud Boys as the "military arm of the Alt-Right" or as embracing "the central tenets of white nationalism," may involve elements of opinion but also imply specific factual assertions about the group's activities and beliefs that could be proven true or false."[T]he courts must consider the content of the communication as a whole, as well as its tone and apparent purpose. Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff." *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995) (internal quotations omitted).

20

This is not as esoteric an exercise as SPLC would have the court think.  As the New York Appellant Division explained, "Assuming, as we must on this motion to dismiss, that the statement in the purportedly defamatory e-mail, that plaintiff's office cubicle contained a statuette of a black man hanging from a white noose, was false as alleged by plaintiff, defendants' views premised on such statement, published under the heading 'Racism,' are not immune from redress for defamation as non-actionable statements of opinion." *Como v. Riley*, 287 A.D.2d 416, 416 (App. Div. 1st Dept. 2001).  This is consistent with the Supreme Court's guidance regarding the limitations on how far "opinion talk" goes toward protecting embedded factual assertions:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."

*Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18–19 (1990).  Here, the challenged statements, when viewed in their full context, would be understood by a reasonable reader as conveying facts about Mr. McInnes and the Proud Boys, not merely expressing opinions. **Did** Gavin McInnes "attend" something or did he not?  **Is** the Proud Boys" the most fertile recruiting ground" for white supremacists and antisemites or is it not?

When considering this question, it must be recalled that, as alleged in detail in the Second Amended Complaint, SPLC's "opinions" are not like other people's:  They are repeated, adopted and presented as factual assertions in countless third-party news articles and reports, where they are neither labeled as opinion pieces or commentary nor are they obviously so.  No less important, many of these are instances of "mixed opinions":  "A statement of opinion that implies a basis in facts which are not disclosed to the reader or listener is actionable because a

21

reasonable listener or reader would infer that the speaker or writer knows certain facts, unknown to the audience, which support the opinion and are detrimental to the person toward whom the communication is directed." *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 149 (1993).

> Under New York law, a plaintiff may maintain a mixed opinion-fact defamation claim where he makes otherwise non-actionable statements of opinion, but where the statement of opinion implies that it is based upon facts which justify the opinion . . . The actionable element of a 'mixed opinion' is not the false opinion itself – it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking.

*Sorvillo v. St. Francis Preparatory Sch.*, 607 F. App'x 22, 24 (2d Cir. 2015), *citing*, *Steinhilber v. Alphonse*, 68 N.Y.2d 283 (N.Y. 1986) and Restatement (Second) of Torts § 566 (1977).

SPLC's mischaracterization of its defamatory statements in its support of its motion border on the shameless, as typified by this passage from page 37 of its filing:

> For example, McInnes challenges the statement that he "full-heartedly supports the [Unite the Right] rally," SAC ¶ 168, yet SPLC disclosed the facts on which the opinion was based. These facts were drawn from the Proud Boys' own website and made available to the reader through a hyperlink at the word "supports."

This statement is still on the SPLC website,[2] and it still links to what used to be the Proud Boys website" – **used to be**.

But the hyperlink does not, in fact, make anything "available." Rather, *Figure 1* below reproduces what a user finds in 2026 when clicking the vaunted hyperlink[3] on the word "supports" from that article.

---

[2] Found at Extremists' "Unite the Right" Rally: A Possible Historic Alt-Right Showcase?

[3] Found at http://officialproudboys.com/news/gavin-mcinnes-virginia-unite-the-right-rally-disavowed/



*Figure 1*

Nothing.

There is no longer a Proud Boys website, mostly thanks to SPLC. The hyperlink referred to by SPLC as "disclos[ing] the facts on which the opinion was based" points to a non-existing page.

The "disclosure" relied on by SPLC in its Motion to Dismiss discloses nothing. Mr. McInnes's claim must be upheld.

This raises the obvious question, however: What did SPLC's hyperlink disclose when the August, 2017 article was uploaded to the SPLC website?

The Wayback Machine, reproduced as *Figure 2* below, answers the question[4]: And that answer is even more damning than SPLC's present hyperlink to nowhere.

---

[4] Found at https://web.archive.org/web/20170825054121/http://officialproudboys.com/news/gavin-mcinnes-virginia-unite-the-right-rally-disavowed/.

23



*Figure 2*

**"DISAVOWED."**

When SPLC published this article, the hyperlink in the word "supports" in the clause

reading "full-heartedly supports" linked to an article that made it crystal-clear, in July of 2017,

that far from supporting the Unite the Right Rally, Gavin McInnes **disavowed** it!  In fact,

**nothing** in the full text of the article[5] could possibly be construed as "full-hearted support" of the

event.

---

[5] The entire article reads as follows:

> In a rare decision, Gavin McInnes has officially announced that the Unite the Right rally in Charlottesville, VA, scheduled on August 12th, has been disavowed. I personally am not surprised by this. The rally is not about "uniting the right," it is an attempt to lump civic-nationalists in with ethno-nationalists in order to make them seem like the same thing.
>
> FUCK.
>
> THAT.
>
> This rally, hosted by Jason Kessler, has speakers such as Matthew Heimbach of the Traditionalist Workers Party, a writer for the Daily Stormer named Johnny Monoxide, Mike Enoch of the Right Stuff, and Dr. Michael Hill of the League of the South.
>
> Here's the deal, I don't really consider most of these people to the right. Since when is how far right you are decided by how racist you are?
>
> The Traditionalist Workers Party are socialists, in my mind that disqualifies you from being on the right. I cringe every time I hear a Traditionalist Workers Party member refer to another member as "comrade," which they regularly do.
>
> I was glad to hear that Gavin agrees with my premise. In a statement, Gavin McInnes said:
>
> "BEEN ASKED A LOT ABOUT THIS "UNITE THE RIGHT" THING GOING ON IN AUGUST. THE ELDERS HAVE TOLD ME TO DISAVOW. I GET THAT IT'S ABOUT FREE SPEECH AND WE WANT EVERYONE – EVEN WHITE NATIONALISTS – TO HAVE THAT RIGHT BUT I THINK IT'S COMING AT A TIME WHEN WE NEED TO DISTANCE OURSELVES FROM THEM. I'M NOT PUNCHING RIGHT. I'M JUST NOT COMING TO YOUR RALLY – NO OFFENSE."
>
> Looking at this rally, it doesn't even look like a rally that fits in with Proud Boys. The imagery looks like something that comes from 1930 Germany. Where are your American flags? Or are you trying to appease those speaking in your group who aren't even proud Americans. Nearly every single one of your speakers do not believe in American values. Just look at this flyer and try to tell me it doesn't look like Nazi propaganda:
>
> The truth is, we don't need white supremacists in Proud Boys. We are western chauvinists, not racists, and welcome anyone who agrees with that. We don't give a shit what the color of your skin is, but nearly all of the speakers at this event can't seem to do anything but talk about skin color. I understand that antifa and the rest of the radical left will continue to call Proud Boys racist. That doesn't mean we should become racists, or share a stage with racists.
>
> I also understand that the left doesn't disavow their extremists in antifa and Black Lives Matter, but we're better than the left. We are able and willing to take the trash out and distance ourselves from our extremists.
>
> So here's the deal Proud Boys, if you want to go to the rally, I can't stop you. But just don't fucking wear your Fred Perry, or decide to belt: "Proud of Your Boy." Remember, we don't allow racists in Proud Boys, if you decide to rub elbows with those people in colors, you very well could find yourself being disavowed.

*Id.*, https://web.archive.org/web/20170825054121/http://officialproudboys.com/news/gavin-mcinnes-virginia-unite-the-right-rally-disavowed/.

It is all a lie. The entire rationale for protecting hyperlinked statements as opinion rests on the principle that readers can "assess the basis upon which the opinion was reached in order to draw (the reader's) own conclusions concerning its validity. *Miserendino v. Cai*, 218 A.D.3d 1261 (App. Div. 4th Dept. 2023). In *Adelson v. Harris*, the court emphasized that even when defendants hyperlinked to an intermediary article rather than the primary source, the protection applied because "the reader was given exposure to multiple statements" providing "a more balanced view." *Adelson v. Harris*, 973 F.Supp.2d 467 (S.D.N.Y. 2013). This reasoning suggests that accuracy in the hyperlink is essential to the protection.

If, however, the hyperlinked content contradicts the visible statement, the speaker is effectively implying undisclosed facts that do not exist – precisely what makes a "mixed opinion" actionable. The visible text would constitute a false factual assertion that cannot be verified by the purported source, transforming it from protected opinion into potentially defamatory misrepresentation. The hyperlink in such circumstances would not serve its intended purpose of disclosure but would instead be a misleading attribution **that compounds the falsity**. "Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18–19 (1990). How much more so is such a statement actionable where, as here, it is implausible that the claimed "basis" for the "opinion" was ever believed in good faith. See, *Rockwell v. Allegheny Health, Educ. & Rsch. Found.*, 19 F. Supp. 2d 401, 406 (E.D. Pa. 1998) (defendant's suggestions, not founded on any disclosed facts, that plaintiff was having an inappropriate sexual relationship and abused vacation policy were expressions of actionable mixed opinion).

SPLC'S clever use, in July of 2017, of a link to falsely suggest "support" for its assertion of "support" by Mr. McInnes falls outside the hyperlink doctrine's protection, because it

26

dishonestly seeks to leave the reader with the impression that it is aware of facts "unknown to those reading or hearing it that are contradicted, not supported, by the linked material.  It may have been clever in 2017, but it was and is actionable; and its unabashed submission of this argument in 2025 is not only not clever but raises significant questions of candor before this Court.

## VI. SPLC'S REMAINING ARGUMENTS INVOLVE FACTUAL DISPUTES THAT SHOULD NOT BE RESOLVED ON A MOTION TO DISMISS

### A.  Substantial Truth

SPLC argues that some of the challenged statements are substantially true. Substantial truth is a defense that typically cannot be resolved on a motion to dismiss because it involves factual determinations about the truth or falsity of the statements.  Mr. McInnes has alleged that each of the challenged statements is false, and at this stage, those allegations must be accepted as true. Whether the statements are substantially true is a factual question that should be addressed after discovery, not at the pleading stage. See, *Garcia v. Puccio*, 17 A.D.3d 199, 201 (App. Div. 1st Dept. 2005) ("a claim of truth or substantial truth, like a claim of qualified privilege, is an affirmative defense to be raised in defendants' answer. Defendants may then move for summary judgment on any such defense available to them  . . . It would be error to give conclusive effect to defendants' position of truthfulness").

### B.  Defamatory Meaning

SPLC argues that some of the challenged statements lack defamatory meaning.  Mr. McInnes respectfully submits that the allegations speak for themselves. "A statement is reasonably susceptible of a defamatory meaning when it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number in the community." *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 360 (S.D.N.Y. 1998) (cleaned up).

27

It is hard to imagine which of the statements SPLC argues is not defamatory it would be comfortable seeing applied to an SPLC director, employee or donor. "While it may be true that these [characterizations] are not 'illegal or immoral,' the law does not require them to be either in order for the statements to be capable of a defamatory meaning." *Id*. at 363. In fact, **any** person of conscience – a commodity which SPLC claims to hold, if not as a monopoly, at least in authoritative quantities – would find all statements in the Complaint more than adequate to expose their targets to hatred, contempt or aversion, or to induce an evil or unsavory opinion about him. This was SPLC's entire purpose, and the very definition of its business.

SPLC argues, for example, that there is no harm and no foul in its false claim that he "brought a samurai sword" to a speaking engagement. SAC ¶ 252. "But the article's assertion," SPLC asserts, "that McInnes used a sword as a prop at a speaking event – whether or not it was a toy, as he alleges – would not expose him to public hatred or shame." This is a preposterous dodge, considering that the theme of SPLC's treatment of Gavin McInnes's activism is that he promotes, encourages and participates in violence. Indeed, the full allegation from ¶ 252 of the Second Amended Complaint is, "In an article by Rachel Janik dated October 13, 2018, on defendant's website entitled 'Far-right skinheads join Proud Boys in assaulting protesters in New York City following Gavin McInnes event,' defendant falsely stated that plaintiff 'brought a samurai sword to his event.'"

Despite the use in ¶ 252 of the words "skinheads" and "assaulting," SPLC writes, "The article contains no assertion or suggestion that McInnes either used or intended to use it to hurt or threaten anyone." The word "threaten" is carrying a great deal of weight here. But if this is

28

not enough to convince the Court of a prima facie claim, it will be helpful to reproduce the

"samurai sword" article as it appears n the SPLC website to this day[6]:



*Figure 3*

As *Figure 3* makes clear, the SPLC presentation of the article, of course, positively screams

(contrary to SPLC's claims) physical harm and threats – the photo, the headline, and excerpts[7]

such as:

> In one video, a far-right assailant in a group of at least 15 screams, "F – –!" as he
> kicks a person lying curled up on the pavement. In another, the men cheer and
> gloat as they leave the scene of the mob assault. One yells a Proud Boys motto, "F

---

[6] Found at https://www.splcenter.org/resources/hatewatch/far-right-skinheads-join-proud-boys-assaulting-protesters-new-york-city-following-gavin/.

[7] *Id*.

– around, find out!" and says, "Dude, I had one of their f – – heads, and I was just f – – smashing it in the pavement!" . . .

The assaults came after Proud Boys founder Gavin McInnes wrapped up remarks at the Metropolitan Republican Club located on the Upper East Side in New York. McInnes brought a samurai sword to his event after promising on his Instagram page to reenact the assassination of Japanese socialist Inejiro Asanuma by teenage ultranationalist Otoya Yamaguchi. . . .

Both the Proud Boys and the 211 Bootboys have repeatedly engaged in violence against their political opponents. In the Pacific Northwest, multiple members of the Proud Boys have been celebrated for assaults, and the highest "degree" of Proud Boy membership is awarded to those who have fought with a left-wing protester.

They don't necessarily contain their violent impulses to confronting aggressive antifascists [*sic*]. . . .

In California, the Proud Boys have attended rallies held since the election of President Trump with other violent extremist groups, like Rise Above Movement (RAM). Four members of RAM were recently arrested and indicted in Charlottesville for traveling to Virginia and conspiring to commit violence at the "Unite the Right" rally in 2017.

This SPLC web page is full of falsehoods, half-truths and misrepresentations, but they are beside the immediate point, which is: In this context, is it truly possible to assert – as a matter of law – that falsely claiming Mr. McInnes literally brought a deadly weapon to an appearance did not imply that he intended to harm or threaten someone? The law is clear: such a claim is defamatory. Under New York law, statements that falsely charge a plaintiff with serious criminal activity are defamatory per se. *Goldman v. Reddington*, 417 F.Supp.3d 163 (2019). A crime is considered "serious" for defamation purposes if it is "(a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude" Id. A samurai sword would likely qualify as either a deadly weapon or dangerous instrument under New York law; under N.Y. Penal Law § 10.00(12), a "deadly weapon" includes "a switchblade knife, pilum ballistic knife, metal knuckle knife, dagger, billy, blackjack, plastic knuckles, or metal knuckles" The false accusation of bringing a weapon to an event would likely constitute

defamation per se because weapons possession offenses are generally punishable by imprisonment.

Courts have recognized that accusations involving crimes of violence are particularly serious. In *Sprewell v. NYP Holdings, Inc.*, 1 Misc. 3d 847 (Sup. Ct. 2003) the court held that articles suggesting a plaintiff committed an attempted assault were "reasonably susceptible to a defamatory connotation" even though they did not expressly charge the plaintiff with a crime. The court emphasized that defamatory language "need not consist of the technical words of a criminal indictment" provided it is "reasonably susceptible to a connotation of criminality". *Id*. at 851. As always, the context in which allegedly defamatory statements appear is critical to determining whether they are actionable, because "many of the statements complained of are not defamatory when viewed in isolation" but "when viewed in the context of the publications in question," they may be. *Jewell,* 23 F. Supp. 2d at 360. . Here, SPLC's article's obvious theme, and its consistent treatment of Mr. McInnes as a violent threat to society – alleged fulsomely throughout the Second Amended Complaint – and SPLC's constant refrains that Mr. McInnes and the Proud Boys were "violent and dangerous" provides context that amplifies the defamatory nature of the false weapon accusation.

### C. Incremental Harm

Finally, SPLC argues that the challenged statements cause no additional harm beyond unchallenged statements. In other words, it is argued, SPLC dumped so much non-actionable calumny on Mr. McInnes – so besmirched his reputation with malicious, knowingly false statements of "mere opinion" that no decent person would utter regarding another except to destroy his reputation and economic life – that it rendered him incapable of being defamed even by otherwise actionable statements.

"Under New York law," however, "every distinct publication of a libelous writing or a slanderous statement gives rise to a separate cause of action." *Jewell*, 23 F. Supp. 2d at 396 (internal quotations omitted; declining to dismiss claim based on the incremental harm defense at the pleading stage). Indeed, it is questionable whether incremental harm is ever an appropriate ground for dismissal at the pleading stage.  See, *Church of Scientology Int'l v. Time Warner*, 932 F. Supp. 589, 594 (S.D.N.Y. 1996) ("the doctrine requires a court to measure the harm flowing from the challenged statement as compared to the harm flowing from the rest of the publication . . . and the parties have not yet conducted discovery on the issue of damages"); *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 468 n.10 (S.D.N.Y. 2012) (incremental harm defense typically arises on summary judgment "after there has been evidence to demonstrate . . . the degree of harm caused by the different statements").

Ultimately, Mr. McInnes submits that the premise of this Court's opinion, dismissing Mr. McInnes's other claims – that is, the very conduct by which he alleges, in vivid detail, SPLC wrongfully destroyed his reputation – but granting him leave to file a Second Amended Complaint negates the incremental harm defense axiomatically.

## CONCLUSION

For the foregoing reasons, Plaintiff Gavin McInnes respectfully requests that this Court deny Defendant Southern Poverty Law Center, Inc.'s motion to dismiss the Second Amended Complaint in whole or part.

BARON COLEMAN LAW FIRM
G. Baron Coleman
18117 Biscayne Blvd # 60460
Miami, FL 33160
334-625-9097
baron@baroncoleman.com

COLEMAN LAW FIRM, PC

 

Ronald D. Coleman

(*Pro hac vice*)
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611
rcoleman@colemanlaw-pc.com
*Attorneys for Plaintiff*
*Gavin McInnes*

Dated:  January 7, 2026